UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| Cub Club Investment, LLC, | |
| Plaintiff, | Case No. 6:20-cv-856 |
| v. | |
| Apple, Inc., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff Cub Club Investment, LLC ("CCI" or "Plaintiff") files this Original Complaint for Copyright Infringement against Defendant Apple, Inc. ("Apple" or "Defendant").

## NATURE OF THE ACTION

1.      This is an action for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*.  This action involves U.S. Copyright Registration Nos. VAu 001-204-290, VAu 001-186-920, VAu 001-152-200, VAu 001-152-192, VAu 001-152-187, VAu 001-180-102, and VAu 001-152-204 (collectively, "Works").  *See* Ex. A.  This action also involves trade dress infringement, unfair competition, misappropriation, and unjust enrichment.  This action arises under the Copyright Act, the Lanham Act, Texas Business & Commerce Code, and state common law, including the laws of Texas.

## PARTIES

2.      Plaintiff CCI is a Texas limited liability company with its principal place of business at 2912 Port Rose Lane, League City, Texas 77573.  CCI is the owner by assignment of the Works.  CCI is owned and operated by Katrina A. Parrott.

3.      Defendant Apple, Inc. is a California corporation, and has a physical place of business at 5505 W. Parmer Lane, Austin, Texas 78727.  Apple is actively transacting business in

Texas.  Apple's Registered Agent for service of process is CT Corporation System, located at 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over this action in accordance with 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq*. and the Lanham Act, 15 U.S.C. § 1125.  Additionally, this Court has supplemental jurisdiction over this action in accordance with 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Apple because Apple maintains multiple places of business in the State of Texas within this judicial district and has purposely availed itself of the privileges and benefits of the laws of the State of Texas.  Apple has continuous and systematic business contacts with the State of Texas.  Apple has a physical place located in the district at 5505 W. Parmer Lane, Austin, Texas 78727.  In addition, Apple Stores are located at Barton Creek Mall (2901 S. Capital of Texas Hwy, Austin, TX 78746), at The Domain (3121 Palm Way, Austin, TX 78758), at The Shops at La Cantera (15900 La Cantera Parkway, San Antonio, TX 78256), and at North Star Mall (7400 San Pedro Avenue, San Antonio, TX 78216).

6.      Venue is proper in this district under 28 U.S.C. §§ 1391, 1400(a).

## FACTUAL BACKGROUND

### CCI's Development of *iDiversicons*® Emoji

7.      Emoji are digital images or icons used to express an idea or emotion by the sender. Emoji are ubiquitous in the digital age, including through communication on smartphones and social media platforms.  Before 2013, people had limited options of emoji to represent themselves, especially in terms of race or color.  In June 2013, Mrs. Katrina A. Parrott envisioned bringing racial diversity into the realm of digital communication after her daughter raised the question, "Wouldn't it be nice to have emoji that look like the person sending them?"  With this vision,

Mrs. Parrott developed an innovative solution and assembled a team to create emoji so that people of all races, gender, orientations, and abilities can express themselves through an abundance of diverse emoji.  Mrs. Parrott founded CCI and created the *iDiversicons*® brand, the world's first diverse emoji.

8.      On October 11, 2013, *iDiversicons*® emoji were launched and released on the Apple App Store with versions compatible on the iPhone, iPad, and iPod Touch.  Additionally, *iDiversicons*® emoji were released on Apple iTunes on December 20, 2014.

### CCI's Registered Copyrights and Other Intellectual Property

9.      CCI registered its first set of copyrighted works, covering emoji with five skin tones, with the U.S. Copyright Office on July 31, 2013.  Today, CCI holds over 20 registered copyrights covering diverse emoji.  *See* Ex. A.  The Works are of great value to CCI and are used daily by its numerous customers that own the application.  CCI is the sole owner and proprietor of all rights, title, and interest in and to the copyrights in the Works.  The copyrights in the Works are presently valid and subsisting and were valid and subsisting at all times affecting the matters complained herein.  The Works are a collection of creative, diverse emoji, including emoji with five skin tones.  Each of the five skin tones comprises one of African-American tone, Asian tone, Latino/Hispanic tone, Indian tone, and Caucasian tone.

10.      Additionally, the innovative, diverse emoji created by CCI are the subject of three pending applications before the U.S. Patent and Trademark Office, including utility and design patent applications.

### CCI's Proposals to Unicode

11.      To make her solution accessible to consumers, CCI and Mrs. Parrott brought *iDiversicons*® emoji to Silicon Valley beginning in 2013.  Mrs. Parrott joined the Unicode

Consortium ("Unicode") on November 5, 2013 and became actively involved with the Unicode Technical Committee ("UTC") as a means to raise awareness among technology leaders about the digital diversity and inclusion issue.  On April 9, 2014, Mrs. Parrott submitted to the UTC document L2/14-085, titled "Request Approval to add 'Our New iDiversicons: Diverse Emoji Characters' to the next updated Unicode Standard."  When Mrs. Parrott presented her proposal on *iDiversicons*® emoji, its mission of bringing diverse emoji to the world, and its five skin tone emoji standard at UTC Meeting 139 on May 7, 2014 in San Jose, California, technology leaders praised her efforts, which sparked a deeper conversation among UTC members regarding the fact that no one was seriously addressing this issue.  The *iDiversicons*® emoji solution for advancing the Unicode Standard to include diverse emoji gained traction at UTC meetings as Mrs. Parrott continued to submit reports and proposals, including "Report on Diversity Emoji Use in iDiversicons and Proposal to Add New Emoji from iDiversicons Collection to Unicode"; "Applying Color Theory to the World of Emoji"; "Adding gender counterparts to emoji list?"[1]  At UTC Meeting 141 on October 28, 2014, hosted by Apple in Sunnyvale, CA, Mrs. Parrott presented her solution of using a color modifier pallet to implement the five skin tone options on digital keyboards, a solution recognized and utilized globally.

     12.    Unicode held the following UTC Meetings: UTC Meeting 139 from May 6 – 9, 2014 in San Jose, California; Unicode held UTC Meeting 140 from August 5 – 8, 2014 in Redmond, Washington; UTC Meeting 141 from October 27 – 30, 2014 in Sunnyvale, California (hosted by Apple); and UTC Meeting 142 from February 2 – 5, 2015 in Mountain View, California.

---

[1]  UTC document L2/14-154, titled "Report on Diversity Emoji Use in iDiversicons and Proposal to Add New Emoji from iDiversicons Collection to Unicode (revised)" (August 5, 2014); UTC document L2/14-204, titled "Applying Color Theory to the World of Emoji" (August 7, 2014); UTC topic L2/15-048 "Adding gender counterparts to emoji list?" (February 3, 2015).

13.     Mrs. Parrott attended UTC Meetings 139, 140, 141, and 142.

14.     Mrs. Parrott submitted the following documents to the UTC: document L2/14-085 titled "Request Approval to add 'Our New iDiversicons: Diverse Emoji Characters' to the next updated Unicode Standard" (April 9, 2014); document L2/14-085 titled "Request Approval to add 'Our New iDiversicons: Diverse Emoji Characters' to the next updated Unicode Standard." (May 7, 2014); document L2/14-154 titled "Report on Diversity Emoji Use in iDiversicons and Proposal to Add New Emoji from iDiversicons Collection to Unicode (revised)." (August 5, 2014); document L2/14-204 titled "Applying Color Theory to the World of Emoji." (August 7, 2014); topic L2/15-048 "Adding gender counterparts to emoji list?" (February 3, 2015).



**CCI Internationally Recognized as Creator of Diverse Emoji**

15.     CCI has sold its emoji app throughout the United States, including to customers in the State of Texas.  CCI has invested significant resources in the design, development, distribution, advertising, and marketing of *iDiversicons*® emoji.  The designs and features of the *iDiversicons*® emoji, including the diverse skin colors on emoji representing various races and ethnicities, have received widespread public attention.

16.     Since 2014, Mrs. Parrott has been internationally recognized as the creator of five skin tone emoji, and she continues to be recognized as the pioneer in digital communication by progressing diversity and inclusion through *iDiversicons*®.  Co-founder and president of Unicode Dr. Mark Davis praised Mrs. Parrott's innovative work, saying, "Without you, we certainly wouldn't have come up with as good a solution!"  American University recognized Mrs. Parrott as a pioneer in diversity and inclusion, and the 2019 film "Picture Character: An Emoji Documentary" featured *iDiversicons*® emoji.   Additionally, numerous articles celebrate her achievements, including: PCWorld, CNN, TexasMonthly, Black Enterprise, Women Leadership Magazine USA, SEVENTEEN, The Daily Dot, Houston Chronicle, Puget Sound Business Journal, Galveston Daily News, and Racing Toward Diversity.  In 2015, the United Athletes Foundation asked Mrs. Parrott to create a Ray Lewis emoji.  This year, the Smithsonian National Museum of African American History and Culture is considering *iDiversicons*® emoji as a potential feature exhibit.

17.     The designs of *iDiversicons*® emoji have distinctive and non-functional features that identify to consumers that the origin of the *iDiversicons*® emoji is CCI.  As a result of at least CCI's continuous and exclusive use of the *iDiversicons*® emoji, CCI's marketing, advertising, and

6

sales of *iDiversicons*® emoji, and the highly valuable goodwill and substantial secondary meaning acquired as a result, CCI owns trade dress rights in the designs and appearances of the *iDiversicons*® emoji, which consumers came to uniquely associate with CCI.  CCI's trade dress rights in the designs and appearances of the *iDiversicons*® emoji are collectively referred to as "CCI's Trade Dress."

18.     An exemplary image of *iDiversicons*® trade dress, shown below, demonstrates the palette of diverse emoji available to users when sending messages on an Apple iPhone.



19.     Additional exemplary images of *iDiversicons*® emoji are shown below:



**Discussions between CCI and Apple**

20.    Starting at a UTC meeting in May of 2014, Mrs. Parrott began discussing a potential partnership between CCI and Apple concerning her copyrighted diverse emoji with Apple's senior software engineer and senior director.

21.    Apple participated in UTC meetings in 2013, 2014, and 2015, including UTC Meetings 139, 140, 141, and 142.

22.    Apple representatives, including Peter Edberg, Apple Senior Software Engineer, participated in UTC Meetings 139 and 140.  Mr. Edberg also participated in UTC Meetings 141 and 142.

23.    On March 27, 2014, Mrs. Parrott sent a first letter by mail and email to Tim Cook, CEO of Apple, requesting a meeting with Apple to discuss a potential partnership between CCI and Apple.

24.     On April 9, 2014, Mrs. Parrot sent a second letter by mail and email to Mr. Cook with additional information about *iDiversicons*® emoji along with images of at least 594 *iDiversicons*® emoji.

25.     On May 2, 2014, Mrs. Parrott sent an email to Mr. Cook requesting an in-person meeting.

26.     During UTC Meeting 139, Mrs. Parrott met Mr. Edberg, and Mr. Edberg reviewed *iDiversicons*® emoji and the *iDiversicons*® website.

27.     On or around May 7, 2014, Mr. Edberg helped coordinate a meeting between Mrs. Parrott and Celia Vigil, Apple's Senior Director for Frameworks and Fonts at the time.

28.     Mr. Edberg helped coordinate the meeting between Mrs. Parrott and Mrs. Vigil to explore partnership opportunities between Apple and CCI.

29.     On or around May 7, 2014, Mrs. Parrott provided Mr. Edberg a thumb drive with over 100 *iDiversicons*® emoji, which Mr. Edberg uploaded to his laptop computer.

30.     On or around May 7, 2014, Mr. Edberg shared the uploaded emoji from Mrs. Parrott's thumb drive with Ms. Vigil during a staff meeting.

31.     On or around May 7, 2014, Mr. Edberg requested that Mrs. Parrott create (1) a series of five skin tone female emoji to compliment the *iDiversicons*® male police officer and construction worker emoji; and (2) a unicorn emoji based on requests from Apple product users.

32.     On May 8, 2014, Mrs. Parrott provided eleven new emoji to Mr. Edberg at the Unicode meeting based on Mr. Edberg's request on May 7, 2014.

33.     On May 8, 2014, Mrs. Parrott met with Ms. Vigil.

34.     On May 9, 2014, Mrs. Parrott sent Ms. Vigil an email with PDF versions of the emoji that Mr. Edberg uploaded from Mrs. Parrott's thumb drive.

35.     On May 9, 2014, Ms. Vigil replied to Mrs. Parrott stating, "Thank you for taking the time to meet with me.  I pointed my colleagues at your [*iDiversicons*®] application.  I can also show them the images you shared with Peter."

36.     On May 9, 2014, Mr. Edberg sent Mrs. Parrott an email stating, "I hope we can work out something between *iDiversicons* and Apple."

37.     On May 23, 2014, Mr. Edberg sent Mrs. Parrott information regarding the Unicode Standard.

38.     On June 9, 2014, Mrs. Parrott sent Mr. Edberg a draft research paper titled "Mobile Diversity Research" (hereinafter, "Research Paper") for his review.

39.     On June 12, 2014, Mr. Edberg responded to Mrs. Parrott's email with recommended edits and comments after reviewing the Research Paper.

40.     On September 26, 2014, Mr. Edberg emailed Mrs. Parrott about his successful testing of *iDiversicons*® emoji on the Apple OSX operating system and implementation instructions.

41.     On September 29, 2014, Mrs. Parrott emailed Mr. Edberg question technical questions regarding implementation, and Mr. Edberg responded.

42.     On October 23, 2014, Mrs. Parrott was disappointed to learn from Mr. Edberg that Ms. Vigil did not see an opportunity to partner with CCI and that Apple was proceeding use its own human interface designers to develop diverse emoji based on *iDiversicons*® emoji.

43.     On October 28, 2014, Mrs. Parrott presented to the UTC her solution of using a color modifier pallet to implement the five skin tone options for diverse emoji.

44.     On January 8, 2015, Mrs. Parrott sent a third letter by mail and email to Mr. Cook requesting that Apple reconsider a partnership with CCI.

45.     On March 5, 2015, the *iDiversicons*® emoji app was a "featured" app on the Apple App Store.

46.     On April 9, 2015, Apple released its first diverse emoji ("Accused Products") using the five skin tone keyboard modifier pallet.



47.     On July 13, 2015, Mrs. Parrott sent a fourth letter by mail and email to Mr. Cook requesting Apple to recognize CCI, *iDiversicons*® emoji, and her development of diverse emoji.

48.     Upon the release of Apple's diverse emoji, CCI experienced a decrease in sales for *iDiversicons*® emoji.

49.     To date, Apple has released at least four versions of its emoji with five skin tone options.

50.     Mrs. Parrott and *iDiversicons*® emoji have been instrumental in shaping and evolving the worldwide emoji landscape, including Apple's release of diverse emoji.

11

**Apple's Copied *iDiversicons*® Emoji**

51.     Apple's emoji are the same or at least substantially similar to the copyrighted *iDiversicons*® emoji that Mrs. Parrott shared with members of Apple's team.

52.     For example, Apple's five skin tone version of the "Oncoming Fist" emoji is the same or substantially similar to CCI's copyrighted five skin tone "Oncoming Fist" emoji.  Other Apple emoji that are the same or substantially similar to CCI's copyrighted emoji include: "Thumbs Up," "Backhand Index Pointing Up," "Backhand Index Pointing Down," "Backhand Index Pointing Left," "Backhand Index Pointing Right," "Index Pointing Up," and "Ear."

**"Oncoming Fist" Emoji**

**"Thumbs Up" Emoji**

| iDiversicons® Emoji<br>Registered: 07/31/2013 (*09/26/2013) | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
| Copyright No. VAu 001-152-200 | |
| Copyright No. VAu 001-180-102* | |
| Copyright No. VAu 001-152-204 | |
| Copyright No. VAu 001-152-192 | |
| Copyright No. VAu 001-152-187 | |

**"Backhand Index Pointing Up" Emoji**

| iDiversicons® Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
| | |
| | |
| | |
| | |

**"Backhand Index Pointing Left" Emoji**

| iDiversicons® Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**"Backhand Index Pointing Right" Emoji**

| iDiversicons® Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**"Backhand Index Pointing Down" Emoji**

| *iDiversicons®* Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**"Index Pointing Up" Emoji**

| *iDiversicons®* Emoji<br>Copyright No. VAu 001-186-920<br>Registered: 04/28/2014 | Apple iOS 13.3<br>Released: 12/10/2019 |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

**"OK Hand" Emoji**



**"Ear" Emoji**



**The Harm to CCI**

53.   As discussed above, CCI receives revenues from its sales of *iDiversicons*® emoji on Apple's App Store and iTunes.

54.     Apple's willful infringement takes away those revenues as Apple device users can access *iDiversicons*®-like emoji on the default Apple keyboard.   Thus, CCI (1) profits commercially without paying the price for the use of CCI's intellectual property; and (2) reduces and causes substantial harm to the value of the Works.   As a result, CCI has been damaged by Apple's conduct in an amount to be determined according to proof at trial.

55.     Apple's infringement has been willful since at least its first release of diverse emoji in 2015.

56.     Unless enjoined by this Court, Apple intends to continue to infringe upon CCI's copyrights and otherwise profit from CCI's Works.   Accordingly, CCI has suffered irreparable harm and will continue to suffer irreparable harm unless Apple is enjoined.   CCI has no adequate remedy at law to redress all of the injuries that Apple has caused and intends to cause by its conduct.   CCI will continue to suffer irreparable damage until Apple's actions alleged above are enjoined by this Court.

57.     Apple's actions also significantly harm innovation and America's progress in diversity and inclusion.   If Apple's copying allows it to misappropriate CCI's substantial investment in research, design, and development, other companies will be encouraged to simply copy others' proprietary works rather than invest in, partner with, or license works.   The significance of Apple's wrongdoing is amplified by the fact that Apple's willful actions target the creative works of the very community CCI seeks to support and include through *iDiversicons*® emoji.

58.     Indeed, this is contrary to Apple's own mission to remedy gaps in diversity and inclusion, especially when Apple's own representatives have recognized Mrs. Parrott's

contributions to bring diversity and inclusion to digital communication. *See* www.apple.com/diversity.

## COUNT I

### Federal Copyright Infringement under the Copyright Act
### (17 U.S.C. §§ 101 *et seq.*)

59.     CCI incorporates by reference the allegations contained in all paragraphs above, inclusive, of this Complaint as if fully set forth herein.

60.     CCI owns valid copyrights in the Works at issue in this case.

61.     CCI registered the Works in this case with the U.S. Copyright Office pursuant to 17 U.S.C. § 411(a).

62.     The U.S. Copyright Office issued valid Certificates of Registration to CCI for the seven (7) registered Works: U.S. Copyright Registration Nos. VAu 001-204-290, VAu 001-186-920, VAu 001-152-200, VAu 001-152-192, VAu 001-152-187, VAu 001-180-102, and VAu 001-152-204.

63.     The Works are original, creative works and copyrightable subject matter under the copyright laws of the United States.

64.     CCI has complied in all respects with 17 U.S.C. §§ 101 *et seq.*, and has secured the exclusive rights and privileges in and to the copyrights in its Works.

65.     By its actions, alleged above, Defendant has infringed and will continue to infringe CCI's copyrights in and relating to CCI's *iDiversicons®* emoji by, *inter alia*, copying, distributing, and creating derivative works, based on the Works without any authorization or other permission from CCI.

66.     Defendant's actions constitute deliberate and willful infringement of CCI's copyrights since it knew, or had reason to know, that its actions constituted copyright infringement; and/or because it has acted with reckless disregard of CCI's copyrights.

67.     CCI never gave Defendant permission or authority to copy, distribute, or display the Works at issue in this case.

68.     As a direct and proximate result of its wrongful conduct, Defendant has obtained benefits to which Defendant is not entitled.

69.     As a direct and proximate result of Defendant's wrongful conduct, CCI has been substantially and irreparably harmed in an amount not readily capable of determination.  Unless enjoined by this Court, Defendant will cause further irreparable injury to CCI.

70.     CCI is entitled to injunctive relief enjoining Defendant, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further infringement of CCI's copyrighted emoji.

71.     CCI is further entitled to recover from Defendant the damages, including attorney's fees and costs, it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendant as a result of its acts of infringement as alleged above.  At present, the amount of such damages, gains, profits, and advantages cannot be fully ascertained by CCI, but will be established according to proof at trial.  CCI is also entitled to recover statutory damages for Defendant's willful infringement of its copyrights.

## COUNT II

### Trade Dress Infringement and False Designation of Origin
### (Lanham Act § 43(a))

72.     CCI incorporates by reference the allegations contained in all paragraphs above, inclusive, of this Complaint as if fully set forth herein.

73.     CCI's Trade Dress includes the overall look and feel of CCI's products, including:

the insertion of an emoji into messages (text messages, e-mails, communication app messages, social media apps, and other forms of content generated by mobile device users) on mobile devices by selecting from a palette of diverse, five skin tone emoji, comprising one of African-American tone, Asian tone, Latino/Hispanic tone, Indian tone, and Caucasian tone.

An exemplary image of *iDiversicons®* trade dress is shown below:



74.     By reason of Defendant's acts complained of herein concerning Defendant's diverse, five skin tone emoji, Defendant has intentionally engaged in conduct that constitutes false advertising, a false designation of origin, a false or misleading description of fact, a false or misleading representation of fact tending wrongfully and falsely to describe or represent a connection between CCI's and Defendant's goods, and infringement of CCI's Trade Dress rights in violation of 15 U.S.C. § 1125(a).  CCI believes that customers are likely to be confused by Defendant's use of such false designations of origin, false descriptions or representations regarding CCI's and Defendant's goods, and by Defendant's confusingly similar trade dress.

75.     In addition, Defendant's trade dress infringement, coupled with their false designation of origin, false descriptions, and misrepresentations, including in advertising, regarding CCI's and Defendant's goods, is likely to confuse mobile device users into thinking that CCI is the source of Defendant's diverse, five skin tone emoji, that CCI has sponsored those goods, that those goods are in some manner affiliated with CCI, or that those goods are the same as CCI's diverse, five skin tone emoji.

76.     Because of Defendant's conduct, CCI has been irreparably harmed in its business. Moreover, CCI will continue to suffer irreparable harm unless Defendant is restrained from infringing CCI's Trade Dress and making false designations of origin, false descriptions, or misrepresentations regarding CCI's and Defendant's goods.

## COUNT III

### Common Law Unfair Competition

1.     CCI incorporates by reference the allegations contained in all paragraphs above, inclusive, of this Complaint as if fully set forth herein.

2.      Defendant's advertisements, marketing, promotions, offers to sell, sales and/or distribution of the Accused Products and infringing products, in direct competition with CCI, constitute common law unfair competition, at least by passing off of Defendant's diverse emoji, by simulating CCI's Trade Dress in an intentional and calculated manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of the Accused Products and infringing products are released by, distributed by, designed by, endorsed by, authorized by, or otherwise associated with CCI.  Defendant has also interfered with CCI's business.

3.      CCI's Trade Dress is entitled to protection under the common law.  CCI's Trade Dress includes unique, distinctive, and non-functional designs.  CCI has extensively and continuously promoted and used CCI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, CCI's Trade Dress designs have become well-known indicators of the origin and quality of CCI's *iDiversicons®* diverse emoji products.  CCI's Trade Dress have also acquired substantial secondary meaning in the marketplace.  Moreover, CCI's Trade Dress acquired this secondary meaning before Defendant commenced its unlawful use of CCI's Trade Dress in connection with the Accused Products and infringing products.

4.      On information and belief, Defendant's use of CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable injury to CCI for which CCI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with CCI's Trade Dress, with CCI, and CCI's products.

5.      On information and belief, Defendant's use of CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Defendant's bad faith is evidenced at least by the similarity of the Accused

Products and infringing products to CCI's Trade Dress, as demonstrated in, for example, illustrations included herein, and by Defendant's continuing disregard for CCI's rights.

6.       On information and belief, Defendant has profited from their unlawful actions and has been unjustly enriched to the detriment of CCI.  Defendant's unlawful actions have caused CCI damage in an amount presently unknown, but in an amount to be determined at trial.

7.       CCI is entitled to injunctive relief, and CCI is also entitled to recover at least CCI's damages, Defendant's profits, punitive damages, costs, and reasonable attorney's fees.

<u>**COUNT IV**</u>

**Common Law Misappropriation**

8.       CCI incorporates by reference the allegations contained in all paragraphs above, inclusive, of this Complaint as if fully set forth herein.

9.       CCI's advertisements, marketing, promotions, offers to sell, sales, and/or distribution of the Accused Products and infringing products, in direct competition with CCI, constitute common law misappropriation.

10.      CCI created the products covered by CCI's Trade Dress through extensive time, labor, effort, skill, and money.

11.      Defendant has wrongfully used CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, in competition with CCI and gained a special advantage because Defendant was not burdened with the expenses incurred by CCI. Defendant has commercially damaged CCI, at least by causing consumer confusion as to origin and/or sponsorship/affiliation of the Accused Products and infringing products, by creating the false and misleading impression that the Accused Products and infringing products are released

by, distributed by, designed by, endorsed by, authorized by, or otherwise associated with CCI, and by taking away sales that CCI would have made.

12.      CCI's Trade Dress is entitled to protection under the common law.  CCI's Trade Dress include unique, distinctive, and non-functional designs.  CCI has extensively and continuously promoted and used CCI's Trade Dress for years in the United States and the State of Texas.  Through that extensive and continuous use, CCI's Trade Dress has become a well-known indicator of the origin and quality of CCI's *iDiversicons*® diverse emoji products.  CCI's Trade Dress has also acquired substantial secondary meaning in the marketplace.  Moreover, CCI's Trade Dress acquired this secondary meaning before Defendant commenced its unlawful use of CCI's Trade Dress in connection with the Accused Products and infringing products.

13.      Defendant's use of CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to CCI for which CCI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with CCI's Trade Dress, with CCI, and CCI's products.  Moreover, as a result of its misappropriation, Defendant has profited and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time, effort, and money that CCI invested in establishing the reputation and goodwill associated with CCI's Trade Dress, with CCI, and CCI's products.

14.      On information and belief, Defendant's misappropriation of CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, has been intentional, willful, and malicious.  Defendant's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to CCI's Trade Dress, as demonstrated in, for example, illustrations included herein, and by Defendant's continuing disregard for CCI's rights.

15.     CCI is entitled to injunctive relief, and CCI is also entitled to recover at least CCI's damages, Defendant's profits, punitive damages, costs, and reasonable attorney's fees.

### COUNT V

**Unjust Enrichment**

16.     CCI incorporates by reference the allegations contained in all paragraphs above, inclusive, of this Complaint as if fully set forth herein.

17.     Defendant's advertisements, marketing, promotions, offers to sell, sales, and/or distribution of the Accused Products and infringing products, in direct competition with CCI, constitute unjust enrichment, at least because Defendant has wrongfully obtained benefits at CCI's expense.  Defendant has also, inter alia, operated with an undue advantage.

18.     CCI created the products covered by CCI's Trade Dress through extensive time, labor, effort, skill, and money.  Defendant has wrongfully used and is wrongfully using CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, in competition with CCI, and has gained and is gaining a wrongful benefit by undue advantage through such use.  Defendant has not been burdened with the expenses incurred by CCI, yet Defendant is obtaining the resulting benefits for its own business and products.

19.     Defendant's use of CCI's Trade Dress, including through reproductions, copies, and/or colorable imitations thereof, has caused and, unless enjoined, will continue to cause substantial and irreparable commercial injury to CCI for which CCI has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with CCI's Trade Dress, with CCI, and CCI's products.  CCI accumulated this goodwill and reputation through extensive time, labor, effort, skill, and investment.  Defendant has wrongfully obtained and is wrongfully obtaining a benefit at CCI's expense by taking undue

advantage and free-riding on CCI's efforts and investments, and enjoying the benefits of CCI's hard-earned goodwill and reputation.

20.     On information and belief, Defendant's unjust enrichment at CCI's expense has been intentional, willful, and malicious.  Defendant's bad faith is evidenced at least by the similarity of the Accused Products and infringing products to CCI's Trade Dress, as demonstrated in, for example, illustrations included herein, and by Defendant's continuing disregard for CCI's rights.

21.     CCI is entitled to injunctive relief, and CCI is also entitled to recover at least Defendant's profits.

**JURY DEMAND**

CCI hereby requests a trial by jury on issues so triable by right.

**PRAYER FOR RELIEF**

WHEREFORE, Cub Club Investment, LLC respectfully requests judgement against Defendant as follows:

A.     Finding that Defendant has infringed CCI's copyrights in the Works;

B.     Finding a substantial likelihood that Defendant will continue to infringe CCI's intellectual property unless enjoined from doing so;

C.     Issuing a permanent injunction enjoining Defendant and its agents, servants, employees, attorneys, successors and assigns, and all persons, firms, and corporations acting in concert with it, from directly or indirectly infringing CCI's copyrights, including, but not limited to, copying, distributing, creating derivative works based upon, publicly performing, or publicly displaying any of CCI's emoji;

D.     Ordering Defendant to render a full and complete accounting to CCI for Defendant's profits, gains, advantages, and/or the value of the business opportunities received from the foregoing acts of infringement;

E.     Entering judgment for CCI against Defendant for all damages suffered by CCI and for any profits or gains by Defendant attributable to infringement of CCI's Works;

F.     Entering judgment for CCI against Defendant for statutory damages based upon Defendant's willful acts of infringement pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*;

G.     Awarding CCI costs and disbursement of this action, including reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505;

H.     Awarding CCI pre-judgement and post-judgment interest, to the fullest extent available, on the foregoing; and

I.     Granting such other, further and different relief as the Court deems just and proper.

Dated:  September 18, 2020                                    Respectfully submitted,

                                                             By*: /s/ B. Todd Patterson*

                                                             B. Todd Patterson
                                                             Attorney In Charge
                                                             Texas Bar No. 00789537
                                                             tpatterson@pattersonsheridan.com

                                                             John A. Yates
                                                             Texas Bar No. 24056569
                                                             jyates@pattersonsheridan.com

                                                             Kyrie Cameron
                                                             Texas Bar No. 24097450
                                                             kcameron@pattersonsheridan.com

                                                             **Patterson + Sheridan LLP**
                                                             24 Greenway Plaza, Suite 1600
                                                             Houston, Texas 77046
                                                             (Tel): 713-623-4844
                                                             (Fax): 713-623-4846

Abelino Reyna
Texas Bar No. 24000087
areyna@pattersonsheridan.com

**Patterson + Sheridan LLP**
900 Washington Ave., Suite 503
Waco, Texas 76701
(Tel.): 254-777-5248
(Fax): 877-777-8071

Craig K. Ribbeck
(Admission to WDTX to be filed)
Texas Bar No. 24009051
craig@ribbecklawfirm.com

**The Ribbeck Law Firm, PLLC**
P.O. Box 550377
Houston, TX 77055
(Tel): 713-621-5220
(Fax): 713-572-1507

*Attorneys for Plaintiff*
*Cub Club Investment, LLC*