# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| Cub Club Investment, LLC,  §<br>         Plaintiff,  §<br>  §<br>   v.  §<br>  §<br> Apple Inc.,  §<br>         Defendant.  §<br>  §<br>  §<br>  § | Civil Action No.: 6:20-cv-856-ADA-JCM |

## DEFENDANT'S MOTION TO TRANSFER VENUE
## UNDER 28 U.S.C. § 1404(a)

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................1

III. LEGAL STANDARD .............................................................................................3

IV. THE NORTHERN DISTRICT OF CALIFORNIA IS THE CLEARLY MORE CONVENIENT VENUE. .......................................................................................4

    A. The private interest factors overwhelmingly favor transfer....................................4

    B. The public interest factors clearly favor transfer. ....................................................7

V. CONCLUSION.....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010) ................................................................................................7

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) .........................................................................................10

*In re Apple Inc.*,
  818 F. App'x 1001 (Fed. Cir. 2020) .........................................................................................4

*Atl. Marine Const. Co. v. U.S. Dist. Ct.*,
  571 U.S. 49 (2013) ....................................................................................................................4

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
  No. 6:15-CV-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ...................................4, 5

*Carruth v. Michot*,
  No. A-15-CA-189-SS, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015) .....................................5

*DataQuill, Ltd. v. Apple Inc.*,
  No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) .........................8, 9, 10

*Gemalto S.A. v. CPI Card Grp. Inc.*,
  No. CV A-15-CA-0910-LY, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) .........................7

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ..............................................................................................10

*Gutierrez v. Collins*,
  583 S.W.2d 312 (Tex. 1979) ....................................................................................................9

*In re Hoffmann-LaRoche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ................................................................................................8

*In re Horseshoe Ent.*,
  337 F.3d 429 (5th Cir. 2003) ....................................................................................................3

*Longview Energy Co. v. Huff Energy Fund LP*,
  533 S.W.3d 866 (Tex. 2017) .....................................................................................................9

*Moskowitz Fam. LLC. v. Globus Med., Inc.*,
  No. 6:19-CV-00672-ADA, 2020 WL 4577710 (W.D. Tex. July 2, 2020) ...............................8

*In re Nitro Fluids L.L.C.*,
  978 F.3d 1308 (Fed. Cir. 2020)..................................................................................10

*Parus Holdings Inc. v. LG Elecs. Inc.*,
  No. 6:19-cv-00432, 2020 WL 4905809 (W.D. Tex. Aug. 20, 2020) .......................................3

*Promote Innovation LLC v. Schering Corp.*,
  No. 2:10-CV-248-TJW, 2011 WL 665817 (E.D. Tex. Feb. 14, 2011)......................................8

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ...............................................................................................4

*Solas OLED Ltd. v. Apple Inc.*,
  No. 6:19-cv-00537, 2020 WL 3440956 (W.D. Tex. June 23, 2020) ........................................4

*Spent v. Geolfos*,
  No. SA-11-CA-306-XR, 2011 WL 13238556 (W.D. Tex. July 19, 2011) ..............................6

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)...............................................................................................9

*TV-3, Inc. v. Royal Ins. Co. of Am.*,
  28 F. Supp. 2d 407 (E.D. Tex. Oct. 30, 1998) .......................................................................9

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011)................................................................................................4

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ................................................................................................3

*In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)....................................... *passim*

*Weatherford Technology Holdings, LLC v. Tesco Corporation*,
  No. 2:17-cv-00456, 2018 WL 4620636 (E.D. Tex. May 22, 2018) ..........................................4

*Wet Sounds, Inc. v. Audio Formz, LLC*,
  No. A-17-CV-141-LY, 2017 WL 4547916 (W.D. Tex. Oct. 11, 2017), *rep. & rec. adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) ..................................................................................................................................6, 7

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
  Nos. 2:10-cv-364, -365, -577, -578, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ..................................................................................................................................8

## STATUTES

28 U.S.C.
   § 1391(b)(1)-(2) ..................................................................................................................4
   § 1400(a) .........................................................................................................................4, 9
   § 1404(a) ......................................................................................................................3, 4, 9

## TREATISES

Restatement (Second) of Conflicts of Law § 145 (1971) ................................................................9

Restatement (Second) of Conflicts of Law § 6 (1971) ....................................................................9

**I.      INTRODUCTION**

When a Houston-area company pursues business in Northern California, then chooses to sue a company from Northern California, and when the vast majority of witnesses and evidence are located in Northern California, the suit should be resolved in Northern California. It makes little sense to try such a case in a judicial district that lacks any connection to the facts, claims, defenses, or witnesses. Yet this is the situation Plaintiff Cub Club Investment, LLC, has created. Although based near Houston, Cub Club chose to sue California-based Apple Inc. hundreds of miles away in Waco, despite this District's lack of any discernible connection to the case.

Apple therefore moves to transfer this action to the Northern District of California. A majority of party and third-party witnesses resides in Northern California. Most of the relevant records are in Northern California. The California court has a strong interest in the case, since Cub Club's allegations center around activities taking place in that District. In contrast, not a single party or witness is based in Waco or anywhere else in the Western District of Texas. To be sure, Apple has a campus in Austin, but *nothing* relevant to this case happened there or involves anyone who works there—and Cub Club does not allege otherwise. Not a single event alleged in the complaint occurred in the Western District of Texas. Forcing witnesses to travel here would cause unnecessary hardship, and because the Court cannot compel California-based third-party witnesses to testify here at trial, proceeding in this district would deprive the jury of seeing and hearing from witnesses whom Cub Club itself alleges played central roles. The Northern District of California is the clearly more convenient venue, and the case should be transferred.

**II.     BACKGROUND**

This is a copyright infringement case about emoji. Emoji are small graphical images commonly used in text-messaging and similar applications, sometimes depicting a representation

1

of a human body part, like a hand making a thumbs-up signal. To ensure that text and emoji sent from one type of device are correctly displayed on another type of device, technology companies follow international software standards. The Unicode Consortium, a Silicon Valley-based non-profit corporation, develops and promotes one such standard: the Unicode Standard. That standard specifies the visual representation of text and emoji in software used for digital communications. (Declaration of Gabriel S. Gross ¶ 2 & Ex. 1.) Apple, like other technology companies, is a member of the Unicode Consortium and participates on the Unicode Technical Committee ("UTC"), which develops and maintains the Unicode standard. (*Id.* ¶ 3 & Ex. 2a–c.) Apple uses the Unicode Standard to determine what emoji to offer on its platform, but Apple designs the actual emoji images itself. (Declaration of Mark Rollins ¶¶ 6, 11.)

Cub Club, based in League City, Texas, claims intellectual property rights in the idea of emoji with different skin tones. (Compl. ¶¶ 2, 7). Cub Club created an application called iDiversicons that provides users with a particular set of emoji, including some with different skin tones. (*Id.* ¶¶ 7–8.). Cub Club's founder, Katrina Parrott, alleges she promoted the iDiversicons application for use in the Unicode Standard at UTC meetings in Redmond, Washington (meeting 140), San Jose, California (meeting 139), Sunnyvale, California (meeting 141), and Mountain View, California (meeting 142). (*Id.* ¶¶ 11–13, 26, 43; Gross Dec. ¶ 4 & Ex. 3). Cub Club alleges that Mrs. Parrott discussed with Apple a potential partnership, both at these meetings and separately with Apple employees in Cupertino. (Compl. ¶¶ 11, 20–44; Rollins Dec. ¶ 11). According to Cub Club, Apple declined to pursue a partnership and instead chose to "use its own human interface designers" to develop emoji with skin-tone variation. (Compl. ¶¶ 26–42.)

Cub Club asserts it owns copyrights in the idea of applying five skin tones to emoji, and that it has trade dress rights in a keyboard interface used to apply those skin tones to emoji. (*Id.*

¶¶ 9, 17–19.). Cub Club claims that Apple infringes Cub Club's copyrights and trade dress and violates its common law rights. (Compl. Counts I–V.) As detailed in Apple's forthcoming motion to dismiss, Cub Club's complaint is premised on the legally erroneous notions that copyright protection extends to mere ideas and that trade dress protection extends to functional product features. If the Court grants this motion and transfers the case, however, it will not need to reach the motion to dismiss, which would be resolved by the transferee court.

### III.   LEGAL STANDARD

Whether to transfer venue is a preliminary issue that must be addressed at the outset of a federal action, and must take "top priority in the handling of this case." *In re Horseshoe Ent.*, 337 F.3d 429, 433 (5th Cir. 2003). The Court may transfer an action to any district or division where it might have been brought if that transfer serves "the convenience of parties and witnesses" and "the interest of justice." 28 U.S.C. § 1404(a). In evaluating convenience, the Court weighs a series of private and public interest factors, discussed in detail below. *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). If the proposed transferee forum is "clearly more convenient," then there is "good cause and the district court should therefore grant the transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). The "plaintiff's choice of venue is not an independent factor in the venue transfer analysis"; rather, the good-cause requirement reflects the appropriate deference to that choice. *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-cv-00432, 2020 WL 4905809, at *2 (W.D. Tex. Aug. 20, 2020); *see also Volkswagen II*, 545 F.3d at 314–15. In assessing a venue transfer motion, the Court does not presume the truth of the non-moving party's allegations, but instead considers any venue-related evidence and resolves whether it favors or disfavors

3

transfer.[1]  *See In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) ("A motion to transfer under § 1404(a) calls upon the trial court to weigh a number of case-specific factors based on the individualized facts on record.").

## IV.   THE NORTHERN DISTRICT OF CALIFORNIA IS THE CLEARLY MORE CONVENIENT VENUE.

That this action could have been brought in the Northern District of California cannot reasonably be disputed.  Apple's headquarters are in the Northern District of California, and the relevant events took place there.  28 U.S.C. §§ 1391(b)(1)–(2), 1400(a).  (Rollins Dec. ¶ 3, 5–11.)  Not surprisingly, then, three private interest factors weigh strongly in favor of transfer, with the "practical problems" factor neutral.  And although the "public-interest factors . . . rarely defeat a transfer motion," those factors also support transfer here.  *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 64 (2013).  In short, "[t]he facts and circumstances of this case are wholly grounded in the transferee forum . . . , and this case has no connection to" the Western District of Texas.  *In re Radmax, Ltd.*, 720 F.3d 285, 290 (5th Cir. 2013).

### A.   The private interest factors overwhelmingly favor transfer.

***Costs for willing witnesses.***  This factor strongly favors transfer.  Witness convenience "*is probably the single most important factor in transfer analysis*."  *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016) (emphasis in original, citation omitted).  All of the likely witnesses with knowledge of Apple's development of emoji with skin-tone variation are in the Northern District of California, except

---

[1] Although this Court has previously relied on *Weatherford Technology Holdings, LLC v. Tesco Corporation*, No. 2:17-cv-00456, 2018 WL 4620636 (E.D. Tex. May 22, 2018), for the proposition that the court "must draw all reasonable inferences and resolve all factual conflicts in favor of the non-moving party," *Solas OLED Ltd. v. Apple Inc.*, No. 6:19-cv-00537, 2020 WL 3440956 (W.D. Tex. June 23, 2020), that reliance has been appropriately "question[ed]," especially given "the elevated 'clearly more convenient' standard that the movant must meet." *In re Apple Inc.*, 818 F. App'x 1001, 1003 (Fed. Cir. 2020).

for one.  The Apple teams that work directly with emoji are based at Apple's Cupertino campus. (Rollins Dec. ¶ 5.)  All likely Apple employee witnesses on these teams reside and work in the Northern District of California save for the one exception, Peter Edberg, who lives in Oregon. (*Id.* ¶ 10–11.)  Not one likely witness resides or works in the Western District of Texas, nor does their work bring them to Apple's Austin campus.  (*Id.* ¶¶ 5–13.)  None of Apple's emoji-related work takes place, or ever has taken place, in Austin.  (*Id.*)  This Court must therefore consider the burden these witnesses will have to bear, because the burden of testifying at trial is borne by individuals, not just by the companies that employ them.  *See Volkswagen II*, 545 F.3d at 317.

Similarly, the third parties most likely to testify in this action reside in the Northern District of California, with all other known third-party witnesses on the West Coast as well.  (*See infra* at 7.)  To take just one example, former Apple employee Celia Vigil, whom Cub Club alleges met with Mrs. Parrott regarding Cub Club's emoji (Compl. ¶¶ 27–28, 30, 33–35, 42), resides in Los Altos, California.  (Rollins Dec. ¶ 11.)  Trying this case in the Western District of Texas would require almost every witness Apple is aware of, including all third-party witnesses, to travel from the West Coast.  The only exception is Cub Club itself (which appears to have only one employee, its founder Mrs. Parrott).  But even Cub Club is not based in this District and will have to travel a significant distance regardless.

***Relative ease of access to sources of proof.***  This factor also weighs strongly in favor of transfer.  Apple's documents are likely to be the main sources of proof in this case, used by both Cub Club to try to prove its claims and Apple to prove its defenses.  *See Carruth v. Michot*, No. A-15-CA-189-SS, 2015 WL 6506550, at *9 (W.D. Tex. Oct. 26, 2015) (in a copyright case, finding that, because "the allegedly wrongful acts took place in Louisiana," "it is more likely relevant physical evidence will be located in Louisiana than Texas, and thus this factor weighs in

favor of transfer"); *Spent v. Geolfos*, No. SA-11-CA-306-XR, 2011 WL 13238556, at *4 (W.D. Tex. July 19, 2011). And the documents concerning Apple's development, design, and implementation of emoji with skin-tone variation were generated and are stored in the Northern District of California, where the teams responsible for emoji-related work are based. (Rollins Dec. ¶ 5.) So too are Apple's financial documents, which may be relevant to Cub Club's claims for damages. (*Id.* ¶¶ 3, 12.) Apple's documents will be collected and produced from the Northern District of California, not from this District. (*Id.* ¶¶ 5, 12.)

That documents may be stored electronically does not undermine the import of their location. "[T]he Fifth Circuit [has] clarified that despite technological advances that make the physical location of documents less significant, the location of sources of proof remains a 'meaningful factor in the analysis.'" *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *2 (W.D. Tex. Oct. 11, 2017), *rep. & rec. adopted*, No. 1:17-CV-141-LY, 2018 WL 1219248 (W.D. Tex. Jan. 22, 2018) (quoting *Volkswagen II*, 545 F.3d at 315).

The Unicode Consortium, a third party which Cub Club discusses at length (*see, e.g.*, Compl. ¶¶ 11–14, 16, 20–22, 26, 32, 37, 43), also is located in the Northern District of California. Unicode is likely to have information relevant to this dispute, including (among other things) information about the intellectual property policies applicable to its members, which may be relevant to Apple's defenses. Unicode is headquartered in Mountain View, California, and three of the four Unicode meetings Cub Club alleges Mrs. Parrott attended took place in the Northern District of California. (*See* Gross Dec. ¶¶ 4–5 & Exs. 3–4; Compl. ¶ 13.) A plurality of voting Unicode members are based in the Northern District of California (with none based in this District), (Gross Dec. ¶ 3 & Ex. 2c), so any relevant documents related to Unicode meetings held by third parties other than Unicode itself are most likely also located in that forum.

Whatever relevant documents Cub Club has are likely to be less voluminous, especially compared to the volume of Apple documents. And regardless, little to no weight should be put on Cub Club's presence in a different Texas district. *Cf. Volkswagen II*, 545 F.3d at 318.

***Availability of compulsory process.*** This important factor also strongly favors transfer. The Complaint identifies *no* third parties in Texas whose attendance could be secured by a subpoena issued from this District, and Apple is aware of none. Meanwhile, several likely third parties reside within the subpoena power of the Northern District of California. *See Volkswagen II*, 545 F.3d at 316–17 (when "a proper venue that does enjoy *absolute* subpoena power . . . is available," that fact favors transfer); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. CV A-15-CA-0910-LY, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). At least four likely third-party witnesses reside in the Northern District of California: (1) Ms. Vigil, (2) Shervin Afshar, who worked with Mrs. Parrott on the UTC submission discussed in the Complaint; and both (3) Chris Wilson and (4) Matt Evans, former Apple employees who worked on the team that designs emoji. (Gross Dec. ¶¶ 6–11 & Exs. 5–7; Rollins Dec. ¶¶ 9–11; Compl. ¶¶ 11, 27–42 & n.1.) All four would be subject to compulsory process in the Northern District of California but not here.

**B.     The public interest factors clearly favor transfer.**

***Local interest.*** The local interest factor strongly favors transfer as well. "Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case." *Wet Sounds*, 2017 WL 4547916, at *4. "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple Inc.*, --- F.3d ---, 2020 WL 6554063, at *9 (Fed. Cir. 2020) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)).

7

The Northern District of California has a strong local interest in this matter. It is the location of Apple's headquarters and the site of the key events, including the design of Apple's allegedly infringing emoji. (Rollins Dec. ¶¶ 3, 5–9); *see, e.g., Wireless Recognition Techs. LLC v. A9.com, Inc.*, Nos. 2:10-cv-364, -365, -577, -578, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (finding this factor favors transfer when defendants are headquartered, develop products at issue, and employ many people in transferee venue). And Cub Club's claims—that Apple willfully infringed its designs (Compl. ¶ 66)—"'call[] into question the work and reputation' of residents of the Northern District of California, not the Western District of Texas." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *4 (W.D. Tex. June 13, 2014) (quoting *In re Hoffmann-LaRoche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).

Unicode's Northern California location further bolsters the localized interest there, given Unicode's role in creating the standard for emoji-skin tone modifiers. *See Moskowitz Fam. LLC. v. Globus Med., Inc.*, No. 6:19-CV-00672-ADA, 2020 WL 4577710, at *6 (W.D. Tex. July 2, 2020) (noting a "third-party supplier" "create[s] a local interest" in the district in which it resides). And three of the four UTC meetings Mrs. Parrott allegedly attended took place in Northern California—as have most UTC meetings. (Compl. ¶ 13; Gross Dec. ¶ 4 & Ex. 3.)

This District has no plausible localized interest in this action. *See Volkswagen II*, 545 F.3d at 317–18. Cub Club itself is located in a different district—the Southern District of Texas—which does not give rise to a localized interest here. *See, e.g., Promote Innovation LLC v. Schering Corp.*, No. 2:10-CV-248-TJW, 2011 WL 665817, at *4 (E.D. Tex. Feb. 14, 2011).

That Apple has an Austin campus does not change the analysis. The "mere presence" of a party's personnel or facilities in a venue, when those personnel or facilities have nothing to do with the case, does not create a local interest. *DataQuill, Ltd.*, 2014 WL 2722201, at *4.

8

Relying on a party's mere presence in a district "improperly conflate[s]" the test for venue under Section 1400 with the transfer factors under Section 1404. *In re Apple*, 2020 WL 6554063, at *9–10. None of the witnesses, evidence, claims, or defenses in this case has any connection to Apple's Austin campus. (Rollins Dec. ¶ 5–13.) As this Court has correctly found before, based on highly similar facts, "[t]here is no dispute Apple has a presence in this district, but that presence is unrelated to this litigation. The egg is here, but the yolk is not. The Northern District of California is clearly the more convenient venue." *DataQuill, Ltd.*, 2014 WL 2722201, at *5.

***Familiarity with governing law and conflicts of law***. This factor is at worst neutral, or slightly favors transfer. Both the Northern District of California and this Court are familiar with and will apply the relevant federal law, including the Copyright Act and the Lanham Act. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).

Although Cub Club has asserted common law claims for unfair competition, misappropriation, and unjust enrichment (Compl. Counts III–V), it is unlikely that any state law will apply because those claims are coextensive with its trade dress claim and thus should be dismissed. (*See* Mot. to Dismiss at 19–20.) To the extent they are not coextensive, those claims are preempted by the Copyright Act. (*See id.* at 20.) Even if Cub Club's state law claims were to go forward, Texas's conflict of law rules, which look to the "most significant relationship" implicated in a case, counsel for applying California law because this case involves a suit against a California company, events that occurred in California, and emoji designed in California. *See Longview Energy Co. v. Huff Energy Fund LP*, 533 S.W.3d 866, 872 (Tex. 2017); *Gutierrez v. Collins*, 583 S.W.2d 312, 318–19 (Tex. 1979) (citing Restatement (Second) of Conflicts of Law §§ 6, 145 (1971)). And a Northern District of California court will be more familiar with California law than courts in this District. *See, e.g., TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F.

Supp. 2d 407, 413–14 (E.D. Tex. Oct. 30, 1998) ("Where a controversy is to be determined by state law, a court should consider the desirability of having a case decided by a court in a state whose substantive law governs the action.").

*Administrative difficulties.* This factor is at worst neutral, or slightly favors transfer. This factor looks to the relative docket congestion of the two venues, not merely the expected time to trial. *In re Nitro Fluids L.L.C.*, 978 F.3d 1308, 1312 (Fed. Cir. 2020); *see also In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); *DataQuill, Ltd.*, 2014 WL 2722201, at *4. It is "the most speculative" factor in the transfer analysis because statistics do "not always tell the whole story." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

That is the case here. The Western District of Texas and the Northern District of California "have historically had comparable times to trial for civil cases (25.9 months for NDCA versus 25.3 months for WDTX)." *In re Apple*, 2020 WL 6554063, at *8. The Western District of Texas currently has a bottleneck of new cases in Waco, whereas the Northern District of California has maintained a consistent timeline for cases, even with its higher overall caseload. (*Compare* Gross Dec. ¶ 9 & Ex. 8a (97% increase in Waco Division's civil case filings from 2017 to 2019), *with* Gross Dec. ¶ 9 & Ex. 8b (13% increase in Northern District of California's civil case filings from 2017 to 2019)). Given the similarity in time-to-trial for the two Districts historically, and the recent increase in filings in this forum, this factor is at worst neutral and at best slightly favors transfer.

## V.   CONCLUSION

Apple respectfully requests that the Court transfer this case to the Northern District of California.

Dated: November 24, 2020                                        Respectfully submitted,

                                                                                                                           */s/ Paige Arnette Amstutz*

| | |
|---|---|
| Andrew M. Gass | Paige Arnette Amstutz |
| *Admitted Pro Hac Vice* | State Bar No. 00796136 |
| andrew.gass@lw.com | pamstutz@scottdoug.com |
| LATHAM & WATKINS LLP | Sameer Hashmi |
| 505 Montgomery Street, Suite 2000 | State Bar No. 24101877 |
| San Francisco, California 94111-6538 | shashmi@scottdoug.com |
| Telephone: (415) 391-0600 | SCOTT DOUGLASS & MCCONNICO LLP |
| Facsimile: (415) 395-8095 | 303 Colorado Street, Suite 2400 |
| | Austin, Texas 78701 |
| Gabriel S. Gross | Telephone: (512) 495-6300 |
| *Admitted Pro Hac Vice* | Facsimile: (512) 495-6399 |
| gabe.gross@lw.com | |
| LATHAM & WATKINS LLP | Elana Nightingale Dawson |
| 140 Scott Drive | *Admitted Pro Hac Vice* |
| Menlo Park, California 94025 | elana.nightingaledawson@lw.com |
| Telephone: (650) 328-4600 | Carolyn M. Homer |
| Facsimile: (650) 463-2600 | *Admitted to practice in W.D. Tex.* |
| | carolyn.homer@lw.com |
| | LATHAM & WATKINS LLP |
| | 555 Eleventh Street, NW, Suite 1000 |
| | Washington, DC 20004 |
| | Telephone: (202) 637-2200 |
| | Facsimile: (202) 637-2201 |

                                    *Attorneys for Defendant Apple Inc.*

## CERTIFICATE OF CONFERENCE

  I certify that counsel for Defendant Apple Inc. conferred with counsel for Plaintiff Cub Club Investment, LLC via telephone on November 20, 2020 regarding the relief sought in the foregoing Motion to Transfer Venue. Cub Club's counsel advised that Cub Club opposes the relief sought in this Motion to Transfer Venue.

                   */s/ Paige Arnette Amstutz*
                   Paige Arnette Amstutz

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.


                                                    */s/ Paige Arnette Amstutz*
                                                  Paige Arnette Amstutz