**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| Cub Club Investment, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:20-CV-856-ADA-JCM |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| Apple Inc., | § | |
| | § | |
| Defendant. | | |

## <u>DEFENDANT APPLE INC.'S MOTION TO DISMISS</u>

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

        A.      Factual Background ................................................................................2

        B.      Procedural History ................................................................................4

III.    LEGAL STANDARD............................................................................................5

IV.     ARGUMENT .......................................................................................................5

        A.      Cub Club has not stated a claim for copyright infringement (Count I). .................5

                1.      Copyright does not protect the idea of applying skin tones to emoji...........7

                2.      Copyright does not protect human features or color variations. .................9

                3.      Cub Club does not state a claim for copyright infringement of any
                        protectable element of its copyrighted works. ...........................................11

        B.      Cub Club fails to state a claim for trade dress infringement (Count II). ...............14

                1.      "The insertion of emoji into messages" is a functional task that
                        cannot qualify for trade dress protection. ...................................................15

                2.      Cub Club has not alleged secondary meaning. ...........................................19

        C.      Cub Club's state law claims (Counts III, IV, and V) should be dismissed...........19

V.      CONCLUSION...................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Abdin v. CBS Broad. Inc.*,
   971 F.3d 57 (2d Cir. 2020)..................................................................................10

*Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*,
   878 F.2d 806 (5th Cir. 1989) ..............................................................................15

*Am. Greetings Corp. v. Dan-Dee Imports, Inc.*,
   807 F.2d 1136 (3d Cir. 1986)..............................................................................17

*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010) ..............................................................................20

*Apple Computer, Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ..............................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................5

*Matter of ATP Oil & Gas Corp.*,
   888 F.3d 122 (5th Cir. 2018) ................................................................................5

*Aurora World, Inc. v. Ty Inc.*,
   No. 09-cv-08463, 2011 WL 13176413 (C.D. Cal. Mar. 14, 2011).......................20

*Bayco Prod., Inc. v. Lynch*,
   No. 10-cv-1820, 2011 WL 1602571 (N.D. Tex. Apr. 28, 2011) .................14, 16, 18

*Blehm v. Jacobs*,
   702 F.3d 1193 (10th Cir. 2012) ..........................................................................10

*Busti v. Platinum Studios, Inc.*,
   No. 11-cv-1029, 2013 WL 12121116 (W.D. Tex. Aug. 30, 2013)..........................6

*Cat & Dogma, LLC v. Target Corp.*,
   No. 19-cv-1002, 2020 WL 4810962 (W.D. Tex. July 23, 2020)..............................6

*Chhim v. Univ. of Texas at Austin*,
   836 F.3d 467 (5th Cir. 2016) (per curiam)............................................................5

*Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*,
   697 F. Supp. 1136 (E.D. Cal. 1987).................................................................13, 14

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
   No. 15-cv-769, 2015 WL 12731929 (C.D. Cal. May 8, 2015)................................................15

*Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*,
   958 F.3d 532 (6th Cir. 2020) ...............................................................................................12

*Ets-Hokin v. Skyy Spirits, Inc.*
   323 F.3d 763 (9th Cir. 2003) ................................................................................................12

*Express Lien, Inc. v. Handle, Inc.*,
   No. 19-cv-10156, 2020 WL 1030847 (E.D. La. Mar. 3, 2020) ...................................15, 18, 19

*Feist Publications, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)...........................................................................................................5, 6

*Fernandez-Montez v. Allied Pilots Assoc.*,
   987 F.2d 278 (5th Cir. 1993) ..................................................................................................5

*Fin. Info. Inc. v. Moody's Investors Serv., Inc.*,
   808 F.2d 204 (2nd Cir. 1986).................................................................................................9

*Folkens v. Wyland Worldwide, LLC*,
   882 F.3d 768 (9th Cir. 2018) .................................................................................................8

*Harvey Cartoons v. Columbia Pictures Indus., Inc.*,
   645 F. Supp. 1564 (S.D.N.Y. 1986)......................................................................................14

*ID7D Co. v. Sears Holding Corp.*,
   No. 11-cv-1054, 2012 WL 1247329 (D. Conn. Apr. 13, 2012)...............................................17

*Interlink Prod. Int'l, Inc. v. HDS Trading Corp., Inc.*,
   No. 15-cv-1642, 2015 WL 12840378 (D.N.J. Oct. 14, 2015) .................................................14

*Kaisha v. Lotte Int'l Am. Corp.*,
   No. 15-5477, 2019 WL 8405592 (D.N.J. July 31, 2019), *aff'd sub nom. Ezaki
   Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 977 F.3d 261 (3d Cir. 2020).....................17

*Kepner-Tregoe, Inc. v. Leadership Software, Inc.*,
   12 F.3d 527 (5th Cir. 1994) ...................................................................................................6

*U.S. ex rel. Lam v. Tenet Healthcare Corp.*,
   481 F. Supp. 2d 673 (W.D. Tex. 2006)...................................................................................3

*Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*,
   866 F.3d 254 (5th Cir. 2017) .....................................................................................14, 15, 18

*Lennar Homes of Tex. Sales & Mktg., Ltd. v. Perry Homes, LLC*,
   117 F. Supp. 3d 913 (S.D. Tex. 2015) ...................................................................................12

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010) .......8, 10, 11, 12

*McGee v. Benjamin*,
   No. 08-cv-11818, 2012 WL 959377 (D. Mass. Mar. 20, 2012) ........................................11, 13

*Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*,
   783 F.3d 527 (5th Cir. 2015) ...................................................................................5, 6, 7, 10

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
   972 F.2d 580 (5th Cir. 1992) ............................................................................................20

*Pretty in Plastic, Inc. v. Bunn*,
   793 F. App'x 593 (9th Cir. 2020) ......................................................................................12

*Profade Apparel, LLC v. Rd. Runner Sports, Inc.*,
   No. 18-cv-1254, 2020 WL 5230490 (S.D. Cal. Sept. 2, 2020)..............................................17

*Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*,
   549 F. App'x 913 (11th Cir. 2013) .....................................................................................12

*Randolph v. Dimension Films*,
   630 F. Supp. 2d 741 (S.D. Tex. 2009), *aff'd*, 381 F. App'x 449 (5th Cir. 2010) 6, 8, 11, 13, 14

*Roxtec, Inc., v. Wallmax S.R.L.*,
   No. 17-cv-2105, 2018 WL 3870013 (S.D. Tex. Aug. 15, 2018) ...........................................17

*Rucker v. Harlequin Enters., LTD.*,
   No. 12-cv-1135, 2013 WL 707922 (S.D. Tex. Feb. 26, 2013)..............................................10

*Sno-Wizard Mfg., Inc. v. Eisemann Prod. Co.*,
   791 F.2d 423 (5th Cir. 1986) ............................................................................................15

*Streetwise Maps, Inc. v. VanDam, Inc.*,
   159 F.3d 739 (2d Cir. 1998)..............................................................................................11

*Sybersound Records, Inc. v. UAV Corp.*,
   517 F.3d 1137 (9th Cir. 2008) ..........................................................................................20

*Taylor v. IBM*,
   54 F. App'x 794, 2002 WL 31845220 (5th Cir. 2002)...........................................................6

*Test Masters Educ. Servs., Inc. v. State Farm Lloyds*,
   791 F.3d 561 (5th Cir. 2015) .......................................................................................14, 15

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001)...........................................................................................................16

*Tropic Ocean Airways, Inc. v. Floyd*,
 598 F. App'x 608 (11th Cir. 2014) ..................................................................................19

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
 845 F.3d 652 (5th Cir. 2017) .........................................................................................20

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.*,
 293 F.3d 791 (5th Cir. 2002) (en banc) ...........................................................................6

*Wal-Mart Stores, Inc. v. Samara Bros.*,
 529 U.S. 205 (2000)...............................................................................................15, 19

*Williams v. 3DExport*,
 No. 19-12240, 2020 WL 532418 (E.D. Mich. Feb. 3, 2020)...........................................7, 10

## STATUTES

15 U.S.C. § 1125(a)(3)..................................................................................................15

17 U.S.C. § 102(b) .........................................................................................................5

28 U.S.C. § 1367(c) .......................................................................................................20

## REGULATIONS

37 C.F.R. § 202.1(a)......................................................................................................11

## I.    INTRODUCTION

Copyright protects only the expression of ideas, not the ideas themselves.  Plaintiff Cub Club Investment has filed an action that contravenes that bedrock legal principle.  This case is about "emoji," which are small graphical images made available in text-messaging and similar applications, sometimes depicting a representation of a human body part, like a hand making a thumbs-up signal.  Cub Club alleges it has obtained copyright registrations for several body-part emoji, each in five different shades, to approximate the naturally occurring variation in humans' skin tones.  Apple offers its own body-part emoji, in a different suite of five colors, featuring different renditions of the real-world objects depicted: differently contoured fingers, differently angled thumbs, and so on.  Cub Club asserts that Apple's emoji infringe the copyrights in Cub Club's emoji, on the theory that Cub Club's exclusive rights prevent anyone else from offering emoji depicting the same body part as Cub Club's emoji, in five different hues.  That contention is incorrect as a matter of law.  It depends on the premise that Cub Club owns a copyright in the *idea* of chromatically varying emoji, irrespective of whether an alternative rendition of the same concept implements the *idea* differently.  Because the Copyright Act and resulting judicial doctrine are crystal clear that Cub Club's exclusive rights do not in fact preclude others from implementing the idea of emoji with different skin tones—the very activity Cub Club says gives rise to liability here—Cub Club's copyright infringement allegations fail to state a claim.

Cub Club's trade dress claim, and its related state law claims, fare no better.  Trade dress, like a trademark, merits legal protection only when it (1) is non-functional and (2) serves as an indicator of the source of goods or services.  Cub Club fails to sufficiently allege either.  To the contrary, the "dress" that the Complaint accuses Apple of having copied is plainly functional:  a smartphone interface that lets users select and insert emoji "when sending messages on an Apple iPhone."  And the Complaint includes no factual allegations at all suggesting that any aspect of

Cub Club's emoji product has acquired secondary meaning in the minds of consumers, as the law requires.

Because the Complaint is legally deficient on its face, Apple respectfully asks the Court to dismiss it in its entirety.

## II.   BACKGROUND

### A.   Factual Background[1]

In 2013, Katrina A. Parrott's daughter had an idea—that it would "be nice to have emoji that look like the person sending them." (Compl. ¶ 7.) Despite emoji being "ubiquitous" on both smartphones and social media platforms, there were limited color options for emoji at that time. (*Id.*) Spurred by her daughter's idea, Mrs. Parrott saw an opportunity to build a business while promoting the concept of diversity in emoji. (*Id.* ¶¶ 7–8.) To do so, she founded Cub Club Investment, LLC and created iDiversicons, which she describes as "the world's first diverse emoji." (*Id.* ¶ 7.) Cub Club then released the iDiversicons application on the Apple App Store on October 11, 2013. (*Id.* ¶ 8.) The application allows users to insert iDiversicons emoji into text messages using the keyboard interface shown to the right. (*Id.* ¶¶ 18, 73.)



After launching the iDiversicons app, Mrs. Parrott joined a consortium that deals with standardization of emoji throughout the technology industry, called "Unicode."[2] She became

---

[1] For purposes of this motion, Apple accepts the Complaint's allegations as true.

[2] The Unicode Consortium is a non-profit corporation founded in 1991 that, through its Unicode Technical Committee, develops and maintains the Unicode Standard. (*See generally* Compl. ¶¶ 11–14.) The Unicode Standard specifies the visual representation of text or symbols in software used for digital communications. (*See generally* Compl. ¶ 11); The Unicode Consortium, https://unicode.org/consortium/consort.html. When device manufacturers use the Unicode Standard,

involved with the Unicode Technical Committee "to raise awareness among technology leaders about digital diversity and inclusion issues." (*Id.* ¶ 11.)  As part of that latter effort, Mrs. Parrott submitted multiple proposals to the Unicode Technical Committee advocating for the adoption of emoji with skin-tone variation by the Unicode Standard.  (*Id.* ¶¶ 11–14.)  Mrs. Parrott also presented her proposals at multiple Unicode Technical Committee Meetings, pushing the Committee to incorporate the iDiversicons emoji into an updated Unicode Standard for emoji with skin-tone variation.  (*Id.*)

While attending one Unicode Technical Committee meeting in May 2014, Mrs. Parrott met Apple Senior Software Engineer Peter Edberg.  (*Id.* ¶¶ 22, 26.)  After they met, Mr. Edberg reviewed the iDiversicons website and Mrs. Parrott gave him a thumb drive with a sampling of iDiversicons emoji (*id.* ¶¶ 26, 29)—that is, the same emoji Mrs. Parrott was pushing the entire Unicode Technical Committee to adopt (*id.* ¶¶ 11, 14, 43).  Around the same time, Mr. Edberg helped Mrs. Parrott set up a meeting with Apple's then-Senior Director for Frameworks and Fonts, Celia Vigil, "to explore partnership opportunities between Apple and [Cub Club]."  (*Id.* ¶¶ 27–28.)  Mr. Edberg also shared with Ms. Vigil the sampling of iDiversicons emoji he had received from Mrs. Parrott.  (*Id.* ¶ 30.)

---

unique text and emoji sent from one manufacturer's devices will result in the equivalent text and emoji being displayed on another manufacturer's devices, and vice versa.  *See generally* The Unicode Consortium, https://unicode.org/consortium/consort.html.  Although the Complaint extensively references the Unicode Consortium, Unicode Technical Committee, and Unicode Standard (Compl. ¶¶ 11–14, 16, 20–22, 26, 32, 37, 43), it does not explain any of this information. Apple thus provides it for context, which the Court can either take judicial notice of or disregard. *See, e.g.*, *U.S. ex rel. Lam v. Tenet Healthcare Corp.*, 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006) (taking judicial notice of facts that "are both generally known and capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned" when ruling on motion to dismiss).

Mrs. Parrott and Mr. Edberg remained in touch over the following months, corresponding about the Unicode Standard, Mrs. Parrott's iDiversicons app, and Mrs. Parrott's efforts related to representations of diversity on mobile platforms. (*Id.* ¶¶ 37–38.) Mr. Edberg remained supportive of Mrs. Parrott throughout that time, responding to technical questions she posed (*id.* ¶ 41), and giving her feedback on a paper she had written entitled "Mobile Diversity Research" (*id.* ¶ 39).

On October 23, 2014, Mr. Edberg told Mrs. Parrott that Ms. Vigil did not see an opportunity for Apple to partner with Cub Club, and that Apple would be relying on its "own human interface designers to develop diverse emoji based on iDiversicons® emoji." (*Id.* ¶ 42.) Notwithstanding that news, Mrs. Parrott continued to participate in the Unicode Technical Committee, giving another presentation to the Committee on October 28, 2014, this time on "using a color modifier pallet[te] to implement the five skin tone options for diverse emoji." (*Id.* ¶ 43.)

On April 9, 2015, Apple released its "first diverse emoji . . . using the five skin tone keyboard modifier pallet[te]" shown here. (*Id.* ¶ 46.) A cursory comparison between the particular five colors in Cub Club's emoji and the particular five colors in Apple's emoji reveals that they are not the same five colors. (*See id.* ¶ 52.)



## B.    Procedural History

Five years later, Cub Club sued. According to Cub Club, the "five skin tone version[s]" of Apple's emoji infringe Cub Club's copyrights "covering emoji with five skin tones." (*Id.* ¶¶ 9, 52, 65.) Cub Club also alleges Apple infringed its trade dress in the "designs and appearances of the iDiversicons emoji," such as the keyboard that allows users to insert emoji with different skin tones. (*Id.* ¶¶ 17–18, 74.) In light of the foregoing, Cub Club asserts claims for federal copyright infringement (Count I); federal trade dress infringement under the Lanham Act (Count II); unfair

competition (Count III); misappropriation (Count IV); and unjust enrichment (Count V). Apple has filed a motion to transfer this case to the Northern District of California, Dkt. 21, and now also moves to dismiss.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a complaint must be dismissed when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Matter of ATP Oil & Gas Corp.*, 888 F.3d 122, 126 (5th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009)). To determine whether dismissal is warranted, the Court accepts as true the well-pleaded allegations in a complaint and construes those facts in the plaintiff's favor. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).[3] The Court does not, however, "credit conclusory allegations or allegations that merely restate the legal elements of a claim." *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). If a complaint's well-pleaded allegations do not show "more than a sheer possibility that a defendant has acted unlawfully," or do not identify a violation of any law at all, the complaint must be dismissed. *Id.* (quoting *Ashcroft*, 556 U.S. at 678).

## IV. ARGUMENT

### A. Cub Club has not stated a claim for copyright infringement (Count I).

"Not all copying . . . is copyright infringement." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). That is because "[t]he copyright does not protect ideas; it protects only the author's particularized expression of the idea." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc*., 783 F.3d 527, 552 (5th Cir. 2015); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea[.]"). This well-

---

[3] Internal quotation marks and citations omitted throughout unless otherwise noted.

5

established principle, known as the idea-expression distinction, reflects the fact that "copyright law assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 800 (5th Cir. 2002) (en banc) (quoting *Feist*, 499 U.S. at 349).  Because of this principle, "where all that has been copied is plaintiff['s] idea, there is no copyright infringement." *Busti v. Platinum Studios, Inc.*, No. 11-cv-1029, 2013 WL 12121116, at *6 (W.D. Tex. Aug. 30, 2013) (quoting *Taylor v. IBM*, 54 F. App'x 794, 2002 WL 31845220, at *1 (5th Cir. 2002)).

To state a claim for copyright infringement, then, a plaintiff must do more than simply allege copying.  Instead, the plaintiff must advance plausible, non-conclusory allegations of copying of the protectable elements of its copyrighted work—that is, the author's particularized expression rather than the underlying ideas that gave rise to the author's expression. *See Randolph v. Dimension Films*, 630 F. Supp. 2d 741, 746 (S.D. Tex. 2009), *aff'd*, 381 F. App'x 449 (5th Cir. 2010).

When evaluating a claim for copyright infringement based on "copyrighted work[s] [that] contain[] unprotectable elements, the first step is to distinguish between protectable and unprotectable elements of the copyrighted work[s]" and "'filter out . . . unprotectable elements of plaintiff's copyrighted materials.'" *Nola Spice*, 783 F.3d at 550 (quoting *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 533–34 (5th Cir. 1994)).  Only then can the Court "ascertain whether the defendant infringed protectable elements of those materials." *Id.* (quoting *Kepner-Tregoe*, 12 F.3d at 533–34); *see, e.g.*, *Cat & Dogma, LLC v. Target Corp.*, No. 19-cv-1002, 2020 WL 4810962, at *2 (W.D. Tex. July 23, 2020) (granting motion to dismiss copyright claims after "'filter[ing] out unprotectable elements, and compar[ing] the remaining protectable expression with the allegedly infringing' work") (quoting *Nola Spice*, 783 F.3d at 550 n.6).

6

Here, three elements of Cub Club's works are relevant to the Court's analysis. First, there is the idea of taking an emoji representing a human body part and making it available in five different colors. Second, there is the selection of body parts as emoji, *ab initio*. And third, there is the particular rendition of those body parts—both in the contours of the shapes, and in the five specific colors selected. Cub Club alleges infringement only of the first—the idea of body-part emoji appearing in five colors. (*See, e.g.*, Compl. ¶ 9 (copyrights "covering emoji with five skin tones"); *id.* ¶ 11 (presenting iDiversicons proposal for "five skin tone emoji standard"); *id.* (presenting iDiversicons "solution of using a color modifier pallet[te] to implement the five skin tone options on digital keyboards"); *id.* ¶ 16 (alleging Mrs. Parrott created "five skin tone emoji"); *id.* ¶ 46 (accusing Apple of releasing "its first diverse emoji . . . using the five skin tone keyboard modifier pallet[te]"); *id.* ¶ 49 (accusing Apple of releasing "at least four versions of its emoji with five skin tone options").) But because copyright does not protect such ideas, Cub Club's claim fails. *See Williams v. 3DExport*, No. 19-12240, 2020 WL 532418, at *3 (E.D. Mich. Feb. 3, 2020) (granting motion to dismiss because, *inter alia*, "even if [Plaintiff] was the first to think up the anime, . . . he could not lay claim to all anime that ever was or will be produced"). Even if Cub Club had alleged infringement of the latter two elements, it would fare no better. As explained below, naturally occurring human characteristics are not copyrightable either, and the Complaint itself establishes that Apple did not copy the actual lines Cub Club used to draw its emoji, or its choice of which body parts to feature. In sum, Cub Club has not alleged and cannot allege any infringement of the protectable aspects of its emoji. It has therefore failed to state a claim.

### 1.   Copyright does not protect the idea of applying skin tones to emoji.

The fundamental, fatal flaw of Cub Club's copyright claim is that it is based entirely on the contention that Apple infringed the idea of applying five skin tones to emoji that represent human body parts. Cub Club alleges its copyright protects "emoji with five skin tones" (Compl.

¶¶ 9, 16.); Mrs. Parrott created iDiversicons as "the world's first diverse emoji" (Compl. ¶ 7); iDiversicons has a "mission of bringing diverse emoji to the world" with a "five skin tone emoji standard" (*id.* ¶ 11); and Mrs. Parrott is recognized as the "creator of five skin tone emoji" (*id.* ¶ 16).   Cub Club then claims that Apple infringes its copyrights because "Apple's five skin tone version[s]" of various body-part emoji infringe Cub Club's "five skin tone" versions of emoji depicting the same body part.  (*Id.* ¶ 52; *see also id.* ¶ 46 ("On April 9, 2015, Apple released its first diverse emoji ('Accused Products') using the five skin tone keyboard modifier pallet[te].").)  In short, Cub Club makes no secret that its copyright claim rises and falls on the copyrightability of the idea of applying five skin tones to emoji.  And because of that, its claim fails.

Copyright does not protect the idea of applying five different skin tones to emoji because ideas are not copyrightable.  "[I]deas, first expressed in nature, are the common heritage of humankind, and no artist may use copyright law to prevent others from depicting them." *Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 775 (9th Cir. 2018).  "Otherwise, the first person to express any idea would have a monopoly over it." *Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010), *as amended on denial of reh'g* (Oct. 21, 2010).  Yet that is exactly what Cub Club is trying to do—assert an exclusive right over the general concept and practice of applying different skin tones to emoji.  (*See, e.g.*, Compl. ¶ 9 (asserting copyrights "covering emoji with five skin tones").)  Because copyright law does not afford Cub Club that right, its copyright infringement claim must be dismissed.  *See Randolph*, 630 F. Supp. 2d at 749 (dismissing copyright infringement claim with prejudice and without leave to amend where plaintiff accused defendant of infringing non-protectable aspects of her works).

The claim is equally deficient to the extent it is premised on the suggestion that the specific number of colors in Cub Club's emoji—five—is the thing about them that is copyrightable.  That

is an equally abstract, unprotectable *idea*.  To be sure, Cub Club could potentially assert a copyright interest in its choice of particular colors A through E—at least to the extent that the colors were themselves *creative* selections, rather than attempts to faithfully reprise features of the human body (which Cub Club's selections do in fact appear to have been, as discussed below).  But the concept of making five variants of a given work of creative expression is not, itself, part of what is protected by the copyright in the creative expression.  *Cf. Fin. Info. Inc. v. Moody's Investors Serv., Inc.*, 808 F.2d 204 (2nd Cir. 1986) (holding that the listing of five facts concerning municipal bonds calls lacked sufficient creativity to merit copyright protection).

### 2.      Copyright does not protect human features or color variations.

Cub Club does not allege that Apple infringes any other aspect of its copyrighted works, presumably because it knows any such claim would fail.  If Cub Club had made such an allegation, the Court would first have to analyze what remains of Cub Club's works once the unprotectable idea of applying different skin tones to emoji is filtered out.  Once that is done, what remains are Cub Club's emoji themselves—body parts in various natural poses, such as the pointed fingers, thumb, and fist shown immediately below, along with the specific shades it chose for them:

   

(Compl. at 12–16.)  The Court would then need to determine whether those remaining aspects of Cub Club's works were (a) protectable and (b) infringed.  The answer to both questions is no.

***Body Part Emoji.***  The use of body parts, in various natural shapes, is not copyrightable because there is "no copyright protection in general human features."  *Blehm v. Jacobs*, 702 F.3d 1193, 1206 (10th Cir. 2012).  "[E]veryday activities, common anatomical features, and natural poses are ideas that belong to the public domain."  *Id*. at 1204.  As a result, "arms, legs, faces, and

fingers [on cartoon figures] . . . are not protectable elements." *Nola Spice*, 783 F.3d at 551 (quoting *Blehm*, 702 F.3d at 1204) (alterations in original).  "[S]tock similarities" in human depictions, like "race, gender, and hair color," are likewise unprotectable.  *Abdin v. CBS Broad. Inc.*, 971 F.3d 57, 67, 72 (2d Cir. 2020); *see also Mattel*, 616 F.3d at 916 (same); *see, e.g.*, *Rucker v. Harlequin Enters., LTD.*, No. 12-cv-1135, 2013 WL 707922, at *1, *8 (S.D. Tex. Feb. 26, 2013) (copyright does not protect decision to make book characters "black-haired, blue-eyed, 'tall, dark, and handsome,'" or "beautiful, with red hair and green eyes").

In light of the foregoing, Cub Club's copyrights do not extend to the adoption of emoji that, as a general matter, reflect human body parts in various natural shapes.  That is presumably one reason why Cub Club does not claim that its exclusive rights cover the relevant hand signals or body parts themselves or that Apple infringes its copyrights simply by having emoji that reflect the same hand signals or body parts as Cub Club's emoji.  (*See, e.g.*, Compl. ¶ 52.)  As Cub Club seemingly recognizes, no one can own and monopolize the images of human features used in digital communications.  *See, e.g.*, *Williams*, 2020 WL 532418, at *3.  Just as one cannot hold a copyright "over the idea of a cartoon figure holding a birthday cake, catching a Frisbee, skateboarding, or engaging in various other everyday activities," *Blehm*, 702 F.3d at 1204, neither can Cub Club enjoy copyright protection in the idea of cartoon fists, ears, or pointing hands (Compl. ¶ 52).  Thus, the mere fact that Apple and Cub Club both have emoji that reflect the same hand signals does not and cannot give rise to a claim of copyright infringement.

***Emoji Colors.***  Nor can Cub Club claim protection over, and infringement of, the particular colors that it chose.  And Cub Club does not even suggest as much.  Rather, it simply alleges that Apple—like Cub Club—uses five different colors in its emoji to represent five different skin tones.  (*Compare* Compl. ¶ 9, *with id*. ¶ 52.)  And for good reason.  First, copyright protection does not

10

extend to "mere variations of . . . coloring."  37 C.F.R. § 202.1(a); *see also Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 748 (2d Cir. 1998) (declining to "view[] the individual colors chosen by [the plaintiff] as the protected elements upon which defendants encroached").  Design choices that reflect race or other naturally occurring differences, including the selection of color, are likewise unprotected.  *Mattel*, 616 F.3d at 916 (district court correctly filtered out "age, race, [and] ethnicity" as unprotected traits that cannot support a copyright infringement claim).  And second, *Apple's five colors are not the same as Cub Club's five colors*.  It is perfectly appropriate—in fact, required—for the Court to make that assessment on a motion to dismiss, where the matter is beyond reasonable dispute and the relevant works in suit appear in the pleadings.  *See, e.g. Randolph*, 630 F. Supp. 2d at 749; *McGee v. Benjamin*, No. 08-cv-11818, 2012 WL 959377, at *9 (D. Mass. Mar. 20, 2012) (granting motion to dismiss copyright claim based on comparison of two musical cartoons set in the same location).[4]

### 3.   Cub Club does not state a claim for copyright infringement of any protectable element of its copyrighted works.

Once the unprotectable elements of Cub Club's works are filtered out—the idea of applying five skin tones to emoji and the natural shapes and colors of Cub Club's emoji—all that remains are the exact lines Cub Club used to draw its emoji, such as the lines that comprise the hand below:

---

[4] Cub Club cannot seriously dispute that skin tones are naturally occurring, and thus non-copyrightable.  Even the Unicode Standard—which Cub Club references throughout its Complaint (Compl. ¶¶ 11, 14, 37)—relied on the universality of skin tone when adopting industry-standard skin tones, choosing to rely on "the Fitzpatrick scale, a recognized standard for dermatology."  *See* Unicode Emoji Version 1.0 (June 9, 2015), http://www.unicode.org/reports/tr51/tr51-3-archive.html.



(*See* Compl. ¶ 52.)  Those lines are the only aspect of Cub Club's emoji that are even arguably subject to copyright protection.  And, as a result, they are the only aspect of Cub Club's emoji that can give rise to a claim of copyright infringement.

Where, as here, the only aspect of a work that is copyrightable is the "stylized rendering" of an image that is not otherwise copyrightable, copyright protection for the work is "thin" and "only protect[s] against virtually identical copying."  *Progressive Lighting, Inc. v. Lowe's Home Centers, Inc.*, 549 F. App'x 913, 920 n.5 (11th Cir. 2013) (citing *Ets-Hokin v. Skyy Spirits, Inc.* 323 F.3d 763, 766 (9th Cir. 2003)).  Put another way, when a "basic idea[]" can only be expressed in a "limited number of ways," such as a thumb pointing upwards or an index finger pointing to indicate direction, "only 'thin' protection, against virtually identical copying, is appropriate." *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).  As a result, where, as here, a plaintiff holds only a "thin" copyright in the works at issue, the plaintiff must allege "virtually identical" copying.  *Lennar Homes of Tex. Sales & Mktg., Ltd. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 944 (S.D. Tex. 2015) (quoting *Mattel*, 616 F.3d at 913–14); *accord Pretty in Plastic, Inc. v. Bunn*, 793 F. App'x 593, 594 (9th Cir. 2020); *Enchant Christmas Light Maze & Mkt. Ltd. v. Glowco, LLC*, 958 F.3d 532, 535, 538 (6th Cir. 2020) (affirming denial of preliminary injunction because copyright protection for animal ice sculptures was "very thin").

Cub Club does not even attempt to allege identical copying by Apple.  (*See* Compl. ¶ 52.) Nor could it, as a simple side-by-side comparison of a Cub Club emoji and an Apple emoji demonstrates:



Apple's artwork is unquestionably different.  (*See id.* ¶ 52.)  Whereas Cub Club's image is a realistic depiction of a hand, shown in a flat color with sharp black outlines, Apple's is more cartoonish, with three-dimensional shading and soft outlines.  (*Id.*)  Cub Club's thumb is thin, tall, and angular, while Apple's thumb is short and rounded.  (*Id.*)  Cub Club's wrist and palm have creases, while Apple's wrist and palm are smooth.  (*Id.*)  Notably, even if skin tone were a protectable element of the design (and it is not), the depictions of pigmentation are not the same— Apple's rendering is a darker brown.  (*Id.*)  Any similarities between the two emoji can be attributed to the fact that they are expressions of the same unprotectable idea:  human hand gestures represented in a variety of skin tones.  (*See generally id.* ¶ 52 (providing selected side-by-side comparisons).)  And such similarities cannot support a claim of copyright infringement.  *See, e.g.*, *McGee*, 2012 WL 959377, at *9; *Cory Van Rijn, Inc. v. Cal. Raisin Advisory Bd.*, 697 F. Supp. 1136, 1139–45 (E.D. Cal. 1987) (granting motion to dismiss copyright claim based on comparison of two sets of dancing, humanized raisins).

In sum, filtering out the unprotectable elements of Cub Club's emoji demonstrates Cub Club fails to plausibly allege, with any factual specificity, that Apple copied any protectable elements of Cub Club's works.  But that is what the law requires to state a legally viable claim for copyright infringement.  *See Randolph*, 630 F. Supp. 2d at 746–49.  Cub Club's Complaint

provides little more than legal labels and conclusory assertions: "Apple's emoji are the same or at least substantially similar to the copyrighted *iDiversicons®* emoji." (Compl. ¶¶ 51–52.) It then adds pictures, hoping the Court will ignore the law and be swayed by side-by-side comparisons that, at most, misleadingly play up similarities between unprotectable elements like human features and skin colors. *See Randolph*, 630 F. Supp. 2d at 746–49; *Cory Van Rijn*, 697 F. Supp. at 1145; *Harvey Cartoons v. Columbia Pictures Indus., Inc.*, 645 F. Supp. 1564, 1569–71 (S.D.N.Y. 1986) (finding no infringement where the only similarity between plaintiff's and defendant's works was that both were "simple line drawing[s] of a cartoon ghost"). Once one looks beyond those unprotectable elements, the appropriate disposition here is clear: Cub Club's claim for copyright infringement must be dismissed.

**B.     Cub Club fails to state a claim for trade dress infringement (Count II).**

Cub Club also fails to state a legally viable claim for trade dress infringement. "Trade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 261 (5th Cir. 2017) (quoting *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 565 (5th Cir. 2015)). When alleging a trade dress claim, the plaintiff must "'identify' [the] 'discrete elements of the trade dress that it wishes to protect.'" *Id.* at 262 (quoting *Test Masters*, 791 F.3d at 565); *see also Interlink Prod. Int'l, Inc. v. HDS Trading Corp., Inc.*, No. 15-cv-1642, 2015 WL 12840378, at *4 (D.N.J. Oct. 14, 2015) (dismissing trade dress claim where the complaint failed to "separate out and identify in a list the discrete elements that make up" the trade dress). Importantly, not every product's "overall appearance" qualifies for trade dress protection. To be protectable, trade dress must be ornamental; it cannot encompass a product's functional elements. *See* 15 U.S.C. § 1125(a)(3); *Laney Chiropractic*, 866 F.3d at 261; *Bayco*

14

*Prod., Inc. v. Lynch*, No. 10-cv-1820, 2011 WL 1602571, at *8–10 (N.D. Tex. Apr. 28, 2011) (dismissing trade dress claim because plaintiff did not "plead[] a plausible claim that its trade dress is nonfunctional and protectable").

Although a party can register its trade dress for protection, registration is not a prerequisite for suit. *See Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000). Where, as here, a plaintiff's alleged trade dress is an unregistered product design, the plaintiff's complaint must do four things. First, it must identify the discrete elements it claims are protected by trade dress. *Laney Chiropractic*, 866 F.3d at 261; *Test Masters Educ. Servs.*, 791 F.3d at 565. Second, it must show "that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). Third, it must show that the claimed trade dress "has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of [the design] is to identify the source of the product rather than the product itself." *Wal-Mart*, 529 U.S. at 211. And fourth, it must allege that the defendant's trade dress is "substantial[ly] similar[]" and therefore "likely to confuse consumers." *Express Lien, Inc. v. Handle, Inc.*, No. 19-cv-10156, 2020 WL 1030847, at *12–14 (E.D. La. Mar. 3, 2020) (citing *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 812 (5th Cir. 1989)). Though Cub Club's trade dress claim falters at every step, its claim is most easily disposed of because it asserts protection over the functional aspects of Cub Club's product and does not allege that the purported trade dress has acquired secondary meaning.

### 1. "The insertion of emoji into messages" is a functional task that cannot qualify for trade dress protection.

Because "'[f]unctional' features cannot be protected" by trade dress, *Sno-Wizard Mfg., Inc. v. Eisemann Prod. Co.*, 791 F.2d 423, 426 n.2 (5th Cir. 1986), a party asserting a trade dress claim must allege plausible facts showing non-functionality. *Bayco*, 2011 WL 1602571, at *9; *see also Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. 15-cv-769, 2015 WL 12731929, at *4 (C.D.

Cal. May 8, 2015) (collecting cases "requir[ing] plaintiffs to allege *how* a trade dress is non-functional").  To determine whether a plaintiff has sufficiently alleged non-functionality, courts consider, *inter alia*, "the averments of the complaint (including the language that [the plaintiff] uses to describe its own trade dress)."  *Bayco*, 2011 WL 1602571, at *9.  Cub Club's own allegations confirm that its trade dress claim must be dismissed.



Cub Club alleges its trade dress consists of the function of "the insertion of . . . emoji into messages . . . by selecting from a palette of diverse, five skin tone emoji." (Compl. ¶ 73.) And Cub Club alleges that its trade dress is exemplified by the user interface shown here, through which a user selects and inserts the desired emoji.  (*Id.*)  But allowing users to insert emoji "select[ed]" from a "palette of diverse emoji . . . on an Apple iPhone" *is* the very function the iDiversicons product provides.  (*Id.* ¶¶ 18, 73.)  Inserting emoji into text messages is "essential to the use or purpose" of the iDiversicons application and the entire "reason the [product] works." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32–33 (2001).  This is classic functionality that is not protected by trade dress rights.

Cub Club's sparse mentions of the word "non-functional" in wholly conclusory allegations are no substitute for factual allegations.  (*See, e.g.*, Compl. Count III ¶ 3, Count IV ¶ 12[5] ("CCI's Trade Dress includes unique, distinctive, and non-functional designs."); *id.* ¶ 17 ("*iDiversicons®*

---

[5] The paragraph numbering in the Complaint restarts on page 21 with Count III.  As such, for the paragraphs contained in Counts III through V, this motion cites the count number and then the paragraph number.

emoji have distinctive and non-functional features").)[6]  Such legal labels do not suffice.  *See Roxtec, Inc., v. Wallmax S.R.L.*, No. 17-cv-2105, 2018 WL 3870013, at *5 (S.D. Tex. Aug. 15, 2018) ("The only mention of functionality in the complaint states: 'The Concentric Circle Design is not functional.'  That conclusory statement does not suffice.").  Nowhere does Cub Club say what parts of its purported trade dress are non-functional, let alone explain what parts of the image above are the allegedly protectable trade dress as opposed to the default Apple iPhone interface.  Because the Complaint's only disavowal of functionality occurs in a "conclusory allegation" like the "sculptural configuration and/or other nonfunctional design features[] is a protectable trade dress," Cub Club's federal trade dress claim must be dismissed.  *ID7D Co. v. Sears Holding Corp*., No. 11-cv-1054, 2012 WL 1247329, at *7 (D. Conn. Apr. 13, 2012); *see also Profade Apparel, LLC v. Rd. Runner Sports, Inc.*, No. 18-cv-1254, 2020 WL 5230490, at *5 (S.D. Cal. Sept. 2, 2020) (dismissing trade dress claim because, *inter alia*, the plaintiff "d[id] not allege any facts to support the non-functionality of its purported trade dress" and instead provided only "a conclusory statement in its Complaint contending that the sock 'contains distinctive elements of non-functional trade dress'").

---

[6] The same paragraphs contain equally conclusory, and thus legally deficient, allegations of consumer confusion.  Cub Club fails to sufficiently plead consumer confusion because, "[w]here the features shared by the conflicting trade dresses are unprotectable because [they are] functional, that dictates against a finding of a likelihood of confusion."  1 McCarthy on Trademarks and Unfair Competition § 8:15 (5th ed.); *see also Kaisha v. Lotte Int'l Am. Corp.*, No. 15-5477, 2019 WL 8405592, at *3 (D.N.J. July 31, 2019) ("When a feature or combination of features is found to be functional, it may be copied and the imitator may not be enjoined from using it, even if confusion in the marketplace will result."), *aff'd sub nom. Ezaki Glico Kabushiki Kaisha v. Lotte Int'l Am. Corp.*, 977 F.3d 261 (3d Cir. 2020) (quoting *Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1141 (3d Cir. 1986)).

Cub Club's failure to identify the aspects of its product it believes are protected by trade dress, and infringed by Apple, is particularly problematic.   A side-by-side comparison of Cub Club's functional interface (below left) and Apple's corresponding interface (below right) reveals that they are, in fact, quite different:




(Compl. ¶¶ 18, 11.)   Far from demonstrating the requisite "aesthetic similarity," *Laney Chiropractic*, 866 F.3d at 262, these images demonstrate only the differences (*e.g.*, in background colors, artistry, and number of skin tone options), which reinforces that Cub Club has failed to plausibly allege any infringement of its unspecified, alleged trade dress.

Finally, to the extent Cub Club claims that the keyboard function is just one aspect of the trade dress at issue, its claim is still legally deficient.   Simply including a picture—which is essentially all Cub Club does—does not absolve Cub Club of its obligation to "identify any discrete elements of the trade dress that it wishes to protect."   *Laney Chiropractic*, 866 F.3d at 262; *see also Bayco*, 2011 WL 1602571, at *9 ("The fact that the complaint is augmented by a visual depiction of the functional features alleged does not make those features any less functional."); 1 McCarthy on Trademarks and Unfair Competition § 8:3 (5th ed.) ("It is not sufficient for the plaintiff to simply submit an image of its design and expect the court to determine what part or parts constitute protectable trade dress.").   Cub Club's failure to specifically articulate what, exactly, comprises its trade dress beyond the identification of the keyboard function leaves the Court with no choice but to dismiss the claim. *See, e.g.*, *Express Lien*, 2020 WL 1030847, at *14

18

(explaining that "an incomplete cataloging of elements of a website, when unaccompanied by any effort to synthesize the elements into a common look and feel, is insufficient to state a trade dress claim").

### 2. Cub Club has not alleged secondary meaning.

Cub Club's trade dress claim fails for a second reason: even if it had identified non-functional, protectable trade dress, it has not alleged that, "in the minds of the public, the primary significance of [its product's design] is to identify [Cub Club as] the source of the product rather than the product itself," *Wal-Mart*, 529 U.S. at 211. Cub Club does not allege *any* facts to indicate that consumers associate its user interface with the *source* of the iDiversicons application. (*See* Compl. ¶¶ 74–75.) Cub Club instead relies on its conclusory claim that its trade dress "includes unique, distinctive, non-functional designs" that have "acquired substantial secondary meaning." (*Id.* Count III ¶ 3; *see also id.* Count IV ¶ 12; Compl. ¶ 17.) But "courts routinely dismiss claims when plaintiffs allege secondary meaning in only conclusory terms without additional facts." *Express Lien*, 2020 WL 1030847, at *12; *see id.* (collecting cases); *see also Tropic Ocean Airways, Inc. v. Floyd*, 598 F. App'x 608, 612 (11th Cir. 2014) ("[C]onclusory allegations about secondary meaning . . . are insufficient to survive a motion to dismiss."). The absence of any plausible, non-conclusory allegations of secondary meaning is fatal to Cub Club's trade dress claim. *See, e.g.*, *Express Lien*, 2020 WL 1030847, at *12–14.

### C. Cub Club's state law claims (Counts III, IV, and V) should be dismissed.

Cub Club's state law claims—unfair competition, which only can be reasonably construed to mean common law trade dress (Count III), misappropriation (Count IV), and unjust enrichment (Count V)—should be dismissed for three independent reasons. First, all three state law claims are rooted in the same allegations as the federal trade dress claim. (Compl. Count III ¶¶ 2–5, Count IV ¶¶ 10–14, Count V ¶¶ 18–20.) They must therefore be dismissed for the same reasons. *See*

*Aurora World, Inc. v. Ty Inc.*, No. 09-cv-08463, 2011 WL 13176413, at *31 (C.D. Cal. Mar. 14, 2011) ("The legal framework used to analyze [state law claims based on federal claim of trade dress infringement] is substantially the same as the framework used to evaluate Lanham Act claims under federal law."); *see also Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) (state law claims based on allegations of federal trademark or trade dress infringement "present[] essentially no difference in issues than those under federal trademark infringement actions").  Second, to the extent any aspect of Cub Club's state law claims are not coextensive with its trade dress claim, those aspects overlap with Cub Club's claim for federal copyright infringement, and are therefore preempted by the U.S. Copyright Act.  *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir. 2017) (Copyright Act "preempts state protection of works that fall within the subject matter (that is, the scope) of copyright, regardless whether the works are actually afforded protection under the Copyright Act."); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1150 (9th Cir. 2008) ("The Copyright Act explicitly preempts state laws that regulate in the area of copyright.").  Finally, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992); *see also* 28 U.S.C. § 1367(c).  Once the Court dismisses Cub Club's federal copyright and trade dress claims, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them in tandem.

V.     **CONCLUSION**

For the foregoing reasons, Apple respectfully requests the Court dismiss Cub Club's Complaint.

Dated:  November 24, 2020                    Respectfully submitted,

                                            */s/ Paige Arnette Amstutz*

Andrew M. Gass                               Paige Arnette Amstutz
*Admitted Pro Hac Vice*                      State Bar No. 00796136
andrew.gass@lw.com                           pamstutz@scottdoug.com
LATHAM & WATKINS LLP                         Sameer Hashmi
505 Montgomery Street, Suite 2000            State Bar No. 24101877
San Francisco, California 94111-6538         shashmi@scottdoug.com
Telephone: (415) 391-0600                    SCOTT DOUGLASS & MCCONNICO LLP
Facsimile:  (415) 395-8095                   303 Colorado Street, Suite 2400
                                             Austin, Texas 78701
Gabriel S. Gross                             Telephone: (512) 495-6300
*Admitted Pro Hac Vice*                      Facsimile:  (512) 495-6399
gabe.gross@lw.com
LATHAM & WATKINS LLP                         Elana Nightingale Dawson
140 Scott Drive                              *Admitted Pro Hac Vice*
Menlo Park, California 94025                  elana.nightingaledawson@lw.com
Telephone: (650) 328-4600                    Carolyn M. Homer
Facsimile:  (650) 463-2600                   *Admitted to practice in W.D. Tex.*
                                             carolyn.homer@lw.com
                                             LATHAM & WATKINS LLP
                                             555 Eleventh Street, NW, Suite 1000
                                             Washington, DC 20004
                                             Telephone: (202) 637-2200
                                             Facsimile:  (202) 637-2201


                                   *Attorneys for Defendant Apple Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ Paige Arnette Amstutz*
Paige Arnette Amstutz