**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| Cub Club Investment, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 6:20-cv-856-ADA-JCM |
| | § | |
| Apple Inc., | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF CUB CLUB INVESTMENT, LLC'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     APPLE'S MOTION TO TRANSFER SHOULD BE DENIED ......................................... 2

    A.      The Private Interest Factors Weigh against Transfer ................................................ 2

    B.      The Public Interest Factors Weight against Transfer ...................................................... 7

III.    ALTERNATIVELY, THE COURT SHOULD TRANSFER TO THE GALVESTON
        DIVISION OF THE SOUTHERN DISTRICT OF TEXAS ............................................. 10

IV.     CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
    No. 6:15-CV-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) ...................................4

*Broadhead Ltd. P'ship v. Goldman, Sachs & Co.*,
    No. 2-06-CV-009 (TJW), 2007 WL 951511 (E.D. Tex. Mar. 28, 2007) ..........................7

*Carruth v. Michot*,
    No. A-15-CA-189-SS, 2015 WL 6506550 (W.D. Tex. Oct. 26, 2015)..........................6, 8

*DataQuill, Ltd. v. Apple Inc.*,
    No. A-13-CA-706-SSS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) ..........................6

*Fintiv, Inc. v. Apple Inc.*,
    2019 U.S. Dist. LEXIS 171102 (W.D. Tex. Sept. 10, 2019).........................................3, 6

*Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*,
    A-18-CV-413 LY, 2018 WL 5539929 (W.D. Tex. Oct. 29, 2018) ...................................3

*Gemalto S.A. v. CPI Card Grp. Inc.*,
    No. CV A-15-CA-0910-LY, 2015 WL 10818740 (W.D. Tex. Dec. 16,
    2015) .............................................................................................................................6

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010) ....................................................................................6

*In re Adobe Inc.*,
    823 F. App'x 929 (Fed. Cir. 2020) ................................................................................5

*In re Apple*
    979 F.3d 1332 (Fed. Cir. 2020) ..................................................................................5, 7

*In re Hoffman-La Roche*,
    587 F.3d 1333 (Fed. Cir. 2009) ....................................................................................7

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ........................................................................................2

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .....................................................................................2, 5

*McKee Foods Kingman v. Kellogg Co.*,
  474 F. Supp.2d 934 (E.D. Tenn. 2006) ............................................................4

*Mitchell v. McKibbon Hotel Group, Inc.,*
  2018 WL 1887295 (W.D. Tex. Feb. 22, 2018) ...........................................3, 6

*MV3 Partners LLC v. Roku, Inc.,*
  No. 6:18-CV-00308-ADA, 2019 WL 10981851 (W.D. Tex. June 25, 2019)
  ...........................................................................................................................2, 7

*Parus Holdings, Inc. v. LG Elecs. Inc.*,
  No. 6:19-CV-00432, 2020 WL 4905809 (W.D. Tex. Aug. 6, 2020) ..................6

*Sing. Asahi Chem. & Solder Indus. Pte. Ltd. v. Apple Inc.*,
  No. 1:18-CV-1662, 2018 WL 6018876 (N.D. Ohio Nov. 16, 2018) ..................8

*Turner v. Cincinnati Ins. Co.*,
  6:19-CV-642-ADA-JCM, 2020 WL 210809 (W.D. Tex. Jan. 14, 2020) ...........3

*Uniloc USA, Inc. v. Chief Architect, Inc.,*
  No. 6:15-CV-1003-RWS-KNM, 2016 WL 9229319 (E.D. Tex. Dec. 2,
  2016) ................................................................................................................7

*Van Dusen v. Barrack,*
  376 U.S. 612, 645-46 (1964) ...........................................................................4

*VLSI Tech. v. Intel Corp.*,
  2019 U.S. Dist. LEXIS 155287 (W.D. Tex. Aug. 6, 2019)................................5

## **Statutes**

28 U.S.C. § 1400(a) .....................................................................................................1

## I.      INTRODUCTION

This is a case brought by a Texas plaintiff in a Texas district that is integral to CCI's claims and with which Apple has had a "quarter-century partnership."  Ex. 1 (Apple Newsroom Press Release dated 12/13/18 quoting Tim Cook).  Yet, Apple has urged this Court to transfer the pending case to the Northern District of California.  *See* Apple's Transfer Motion (Dkt. 21).

The idea for CCI's iDiversicons® began in in this District when Katrina Parrott's daughter, a then junior at the University of Texas, realized the existing emoji did not look like her.  From there, Mrs. Parrott developed the first diverse emoji and made them available through the iDiversicons® mobile app.  The CCI team celebrated the launch of iDiversicons® at the Student Activity Center on the UT campus November 9, 2013 and advertised iDiversicons® at movie theatres throughout the Austin area.  *See* Ex. 2 (Launch Party Flyer), Ex. 3 (Advertising Invoices).

Certainly, Apple resides and may be found in this District.  *See* 28 U.S.C. § 1400(a).  In fact, Apple admits, "Austin already represents the largest population of Apple employees outside Cupertino."  Ex. 1.  Apple's Austin employees perform a broad range of functions, including engineering, R&D, operations, finance, sales, and customer support—many of whom likely have information relevant to CCI's claims and Apple's potential defenses.  *Id.*  Apple also manufactures products, such as Mac Pros, and sells products and distributes software to millions of consumers in this District—many of which include Apple's diverse emoji keyboard central to CCI's claims.

While there has been no discovery in this case since Apple only filed its response to CCI's Complaint (Dkt. 22) and the pending Transfer Motion (Dkt. 21) on November 24, 2020, it is already clear that potential third party witnesses and documents span coast to coast.

Apple's attempt to avoid litigation in this District by ignoring these facts and cherry picking Apple and third party witnesses in the Northern District of California must fail.

## II.     APPLE'S MOTION TO TRANSFER SHOULD BE DENIED

As set forth below, an analysis of the *Volkswagen I, II*[1] factors confirms that Apple has failed to demonstrate that the Northern District of California is ***clearly*** more convenient.  This Court should therefore deny Apple's Transfer Motion.

### A.     The Private Interest Factors Weigh against Transfer

***Cost of Attendance for Willing Witnesses***.  Apple's pre-discovery attempt to highlight its own handpicked witnesses in California—and thereby avoid trial in this District—must fail.

*First*, Apple contends, "[n]ot one likely [Apple] witness resides or works in the Western District of Texas, nor does their work bring them to Apple's Austin campus."  Dkt. 21, p. 5.  As a threshold matter, this Apple argument fails because Apple has failed to "identify specific witnesses ***and*** outline the substance of their testimony."  *See MV3 Partners LLC v. Roku, Inc*., No. 6:18-CV-00308-ADA, 2019 WL 10981851, at *11 (W.D. Tex. June 25, 2019) (internal citations omitted).

Moreover, even a cursory review of publicly-available information confirms Apple has at least 7,000 employees in Austin whose roles include "engineering, R&D, operations, finance, sales and customer support" many of whom likely have knowledge (and documents) relevant to this case.[2]  Exs. 1 and 4.  In fact, Apple's Global Lead, Inclusion & Diversity Business Partnership works in Austin, which is not surprising since Apple has stated a core mission of its Austin campus is furtherance of Apple's commitment to diversity and inclusion.  *See* Ex. 5 (LinkedIn Profile of James Logan).  Undoubtedly, Apple's department of Inclusion & Diversity Business Partnership has information relevant to CCI's claims since Mrs. Parrott, the African-American inventor of

---

[1]  *See In re Volkswagen AG*, 371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*"); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*Volkswagen II*").

[2]  At a minimum, venue discovery is necessary to determine which of Apple's Austin employees have information relevant to CCI's claims and Apple's potential defenses.

diverse emoji, approached Apple on numerous occasions regarding a partnership with CCI to bring diverse emoji to the world. *See, e.g.*, Dkt. 1 ("Compl."), ¶¶ 23, 28, and 44. This publicly-available evidence mitigates strongly in favor of maintaining the case in this District. Moreover, potential Apple witnesses, as employees of Apple, are "as a practical matter, available to testify in any venue by virtue of the employment relationship." *Mitchell v. McKibbon Hotel Group, Inc.,* 2018 WL 1887295, at *10 (W.D. Tex. Feb. 22, 2018).

*Second*, as the facts alleged in the Complaint show, material witnesses are not in California. Apple downplays the fact that two important witnesses—Katrina Parrott and Peter Edberg, whose knowledge is central to the pending claims—do not reside in the State of California. *See* Compl., ¶ 26-42. Nor does Katy Parrott, the Co-Founder and only other member of CCI. *See* Ex. 6, Declaration of John Yates ("Yates Decl."), ¶ 2. While it is true, "[t]he convenience of party witnesses is given little weight," if the Court considers the convenience of Apple's party witnesses, it must also consider the convenience of CCI's party witnesses, all of whom reside in Texas. *Fintiv, Inc. v. Apple Inc*., 2019 WL 4743678, at *18 (W.D. Tex. Sept. 10, 2019); *Turner v. Cincinnati Ins. Co.*, 6:19-CV-642-ADA-JCM, 2020 WL 210809, at *4 (W.D. Tex. Jan. 14, 2020); *Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, A-18-CV-413 LY, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018).

*Third*, even Apple has identified current or former employees or officers of the Unicode Consortium as potential witnesses in their initial disclosures to CCI. And, a simple search of Unicode's current members demonstrates that current and former employees and officers of the Unicode Consortium reside in states around the country. *See*

https://home.unicode.org/membership/members/ (last visited December 3, 2020).[3]  In fact, the President of the Unicode Consortium, Mark Davis, with whom Mrs. Parrott and Peter Edberg had numerous relevant discussions, does not reside in the State of California.  *See* Ex. 7 (Public Twitter profile of Mark Davis); Compl., ¶ 16.  Other third party witnesses, whom have been disclosed to Apple in CCI's initial disclosures and whom reside outside of the State of California, include Johnetta Queen (Illustrator for CCI) and Gary Evans (Software Developer for CCI).   In fact, Johnetta Queen lives on the East Coast, as do certain members of the Unicode Consortium.

Thus, Apple's disingenuous conclusion that trying this case in this District "would require almost every witness Apple is aware of, including all third-party witnesses, to travel from the West Coast" is incorrect. Dkt. 21, p. 5.  Indeed, the Parties have already identified witnesses in the state of Texas, and from both coasts, who have knowledge of the facts and information relevant to CCI's claims and Apple's potential defenses.  This Court has held that the "transfer of venue for the convenience of parties and witnesses must render the litigation more convenient ***as a whole*** and ***not merely shift inconvenience between the parties***." *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-CV-00091, 2016 WL 6909479, at *10 (W.D. Tex. Jan. 28, 2016) (emphasis added) (citing *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp.2d 934, 942 (E.D. Tenn. 2006)); *see also Van Dusen v. Barrack,* 376 U.S. 612, 645-46 (1964).  Frankly, with third party witnesses on both coasts, Apple's second headquarters located in Austin, and all members of CCI living in Texas, the Western District of Texas provides the most convenient and central location for trial.

---

[3] As an example, Emojipedia is a voting member of Unicode's Emoji Subcommittee.  At least one of the three publicly-identified Emojipedia employees, Ryan McDermont, is an Austin resident. The other two publicly-identified employees of Emojipedia apparently live in the United Kingdom and Ireland.  Former Emojipedia employee, John M. Kelly, also has knowledge of Apple's diverse emoji implementation and claims to "currently live in Austin, Texas." *See* Exs. 10, 13, and 14.

For at least these reasons, Apple has not shown that California is "***clearly*** more convenient with respect to the cost of attendance of willing witnesses to justify the transfer…" *VLSI Tech. v. Intel Corp.*, 2019 WL 4254065, at \*21-22 (W.D. Tex. Aug. 6, 2019).

***Relative ease of access to sources of proof***.  Similarly, Apple's pre-discovery attempt to highlight its own documents in California—to avoid trial in this District—must also fail.

All of CCI's physical documents related to Mrs. Parrott's conception and development of her diverse emoji, known as iDiversicons®, are in Texas, as are the physical documents related to Mrs. Parrott's correspondence with Apple and Unicode, which form the basis of CCI's claims. *Compare* Yates Decl., ¶ 2 *with In re Adobe Inc.*, 823 F. App'x 929, 931 (Fed. Cir. 2020) (finding transfer appropriate where the inventor and his company were, unlike here, located in the transferee venue).  In *In re Apple*, the Federal Circuit explained, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *See* 979 F.3d 1332 (Fed. Cir. 2020) (internal citations omitted).  Here, CCI's claims are related to copyright infringement and trade dress.  To date, Apple has alleged that CCI does not have any protectable subject matter, which necessarily requires review of CCI's copyright registrations and documents related thereto, all of which are located in Texas.  *See* Dkt. 22.  Undoubtedly, all of these documents are nearer to this District than the Northern District of California.  Apple seeks to undermine the importance of these essential documents in Texas by relying on the argument that CCI's documents are "less voluminous, especially compared to the volume of Apple documents." Dkt. 21, p. 7.  But, how voluminous one party's group of documents may be is not determinative. *See Volkswagen II*, 545 F.3d at 314-15 (no single factor is dispositive).  If that were the standard,

Apple would undoubtedly move every trial to the Northern District of California. Instead, the test is whether, as a whole, the transferee venue is ***clearly*** more convenient—it is not.

While Apple asserts that a majority of its documents and evidence are located in California, Apple has an actual office—it's second largest—in the District with computer access such that access to the documents from the District is not difficult. *See Parus Holdings, Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432, 2020 WL 4905809, at * 9 (W.D. Tex. Aug. 6, 2020) (distinguishable because this Court found access to documents from this District was difficult since "LG has no offices, facilities or relevant employees" in this District); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. CV A-15-CA-0910-LY, 2015 WL 10818740, at *14 (W.D. Tex. Dec. 16, 2015) (neither party had facilities in District in case brought by French plaintiff); *In re Acer Am. Corp*., 626 F.3d 1252, 1256 (Fed. Cir. 2010) (distinguishable because the court found no party with any source of proof in the transferor district). Indeed, this Court has previously observed that, "there is no difference in the relative ease of access to sources of proof from the transferor district as compared to the transferee district when the vast bulk of documents are electronic." *Fintiv Inc.*, 2019 WL 4743678, at *12-13. Thus, there is no basis to shift the expense and inconvenience from Apple to CCI. *See Mitchell*, 2018 WL 1887295, at *5.

Moreover, third party documents from Unicode, for example, are likely located throughout the United States where its employees and members reside. *See, e.g.*, *supra*, n.3.

***Availability of compulsory process***. Unlike many of Apple's cited cases, this is not a case in which the majority of non-party witnesses are in the transferee venue. *See, e.g.*, *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SSS, 2014 WL 2722201, at *11 (W.D. Tex. June 13, 2014) (finding majority of non-party witnesses resided in or around Silicon Valley in a case brought by a foreign plaintiff with no ties to this District); *Carruth v. Michot*, No. A-15-CA-189-SS, 2015

WL 6506550, at \*30 (W.D. Tex. Oct. 26, 2015) (finding a majority of material non-party witnesses reside in the transferee district).  Instead, both Parties have already identified party and non-party witnesses outside of the subpoena power of both this Court and the courts of the Northern District of California.  *See supra* (identifying, *e.g.,* Mark Davis, Johnetta Queen, Katrina Parrott, and Peter Edberg); *see also, e.g., Broadhead Ltd. P'ship v. Goldman, Sachs & Co.*, No. 2-06-CV-009 (TJW), 2007 WL 951511, at \*8-9 (E.D. Tex. Mar. 28, 2007) (finding this factor to be neutral where defendant's list of potential witnesses included witnesses outside of both the potential transferor and transferee districts); *MV3 Partners LLC*, 2019 U.S. Dist. LEXIS, at \*9  (finding that this factor does not weigh in favor of transfer where there is only a vague assertion of potential unwilling third-party witnesses). Therefore, this factor should at worst be weighed neutral.

B.     **The Public Interest Factors Weight against Transfer**

*Local interest*.  Incredibly, Apple argues "[t]his District has no plausible localized interest in this action."  Dkt. 21, p. 8.

Apple's significant ties to the Western District of Texas are well known.  CCI does not dispute that the Federal Circuit recently found Apple's significant ties to the District at large were not enough.  *See In re Apple*, 979 F.3d 1332 (Fed. Cir. 2020) (internal citations omitted).  Instead, the Court looks to the connections between the District and the facts of this suit.  *Id.*

Here, as Apple's own arguments contemplate, the "[l]ocal interest may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community."  *See, e.g.*, *Uniloc USA, Inc. v. Chief Architect, Inc.*, No. 6:15-CV-1003-RWS-KNM, 2016 WL 9229319, at \*18 (E.D. Tex. Dec. 2, 2016) (citing *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009)).  While Apple again cherry picks certain California employees who will be involved in this case, the reputation of

Apple's Austin employees—including at least members of Apple's Inclusion & Diversity Business Partnership team—will also be called into question.  Likewise, Apple's Mac Pros have been manufactured in the same facility in Austin since 2013.  *See* Ex. 11.  Like iPhones, Apple's Mac Pros also include the software that enables the emoji keyboard functionality, allowing users to transmit the diverse emoji at issue in this case.  *See* Ex. 12.

Accordingly, this District has a localized interest that weights against transfer.  At worst, this factor is neutral, and the Northern District of California is not ***clearly*** more convenient.

***Familiarity with governing law and conflicts of law.***  CCI and Apple agree that both this District and the Northern District of California are familiar with the federal law relevant to CCI's Copyright Act and Lanham Act claims.  *See* Dkt. 21, p. 9.  Thus, at a minimum, this factor is neutral and does not demonstrate that the Northern District of California is ***clearly*** more convenient.

Importantly, however, CCI, a Texas company, has also asserted Texas state common law claims for unfair competition, misappropriation, and unjust enrichment.  Apple asserts "it is unlikely that any state law claim will apply because those claims are coextensive with [CCI's] trade dress claim" or are otherwise "preempted by the Copyright Act."  *Id*.  However, Apple's conclusory, self-serving opinion regarding the likelihood of success of its own motion to dismiss is not sufficient to show that the Northern District of California is ***clearly*** more convenient—nor is Apple's conclusory, self-serving opinion that California law will govern CCI's state common law claims.  *See Carruth*, 2015 WL 6506550, at * 35 ("However, it is entirely unclear which law would govern the various tort claims.  Because either court will need to undertake this inquiry . . . this factor is neutral as to the tort claims."); *see also Sing. Asahi Chem. & Solder Indus. Pte. Ltd. v. Apple Inc.*, No. 1:18-CV-1662, 2018 WL 6018876, at *5 (N.D. Ohio Nov. 16, 2018) (denying

8

"arguments raised by Apple in support of transfer [which] depend on evidence which has yet to be discovered; *self-serving speculation* as to the importance and/or role certain Parties and/or witnesses will ultimately play; and, conjecture as to the willingness of certain witnesses to participate if this case remains in the Northern District of Ohio") (emphasis added).

Moreover, Apple's argument seemingly ignores the fact that transfer to a California district court would seemingly eradicate this Texas plaintiff's right to bring a cause of action under a Texas statute in a Texas federal court.

*Administrative difficulties/All other practical problems*.[4]  From a practical perspective, maintaining the pending litigation in this District is easier, quicker, and cheaper.  Even Apple acknowledges that the time to trial in this District is slightly faster.  *See* Dkt. 21, p. 10.  While Apple alleges a purported "bottleneck of new cases in Waco," Apple ignores that California's statewide restrictions in response to the ongoing COVID-19 pandemic have already significantly delayed trials in the Northern District of California while this District has repeatedly emphasized its desire and plan to continue with trials as scheduled.  In fact, the Northern District of California previously issued a notice that "[n]o new criminal or civil jury trials [would] be commenced prior to October 1, 2020" and thus halted all trials for several months. Ex. 8.  Even further, California's recent Regional Stay at Home Order dated December 3, 2020, imposes travel restrictions on out of state visitors to the affected regions requiring extended hotel stays for quarantine periods.  Ex. 9. These practical considerations will necessarily result in delays and additional travel expenses should the case be transferred.  In fact, if this case were to proceed to trial today in the Northern District of California, even willing party witnesses, such as Apple's Peter Edberg and CCI's

---

[4] The "all other practical problems" factor is a private interest factor; however, it is analyzed here in conjunction with the "administrative difficulties" public interest factor due to the significant overlap in the discussion and consistent with Apple's Transfer Motion.

Katrina Parrott would be forced to travel to the venue and quarantine for a period of time (away from their work, family, and community)—a fact which further undermines Apple's argument related to costs of attendance for willing witnesses.  *See, Supra*.

Additionally, this case is not one of multiple suits in different districts involving the same or similar issues that may create practical problems that will weigh in favor of or against transfer.

The faster time to trial in this District and current delays and restrictions in the Northern District of California demonstrate that the Northern District of California is not ***clearly*** more convenient.  In any event, the Parties agree this factor is at worst neutral.  *See* Dkt. 21, p. 10.

## III.   ALTERNATIVELY, THE COURT SHOULD TRANSFER TO THE GALVESTON DIVISION OF THE SOUTHERN DISTRICT OF TEXAS

To the extent the Court finds insufficient ties to this District, at a minimum, the Court should transfer to the Galveston Division of the Southern District of Texas, where CCI's party witnesses, CCI's documents, and certain third-party witnesses reside. Without a doubt, there are numerous willing party and non-party witnesses and significant sources of proof in the Southern District of Texas, as well as a localized interest since the asserted copyrights and trade dress were developed by residents of the Galveston Division of the Southern District of Texas.

## IV.   CONCLUSION

This District is home to Apple's second largest office, directly related to many relevant facts supporting CCI's claims, in the same state as CCI, and centrally located between third party witnesses on both coasts.  Apple has not shown that the Northern District of California is ***clearly*** more convenient and the Court should deny Apple's motion to transfer at least to allow for venue discovery.  To the extent the Court decides to transfer this case pre-discovery, the Court should transfer to the Galveston Division of the Southern District of Texas.

Dated: December 9, 2020

Respectfully submitted,

**PATTERSON + SHERIDAN LLP**

*/s/ B. Todd Patterson*
B. Todd Patterson
Texas Bar No. 00789537
tpatterson@pattersonsheridan.com

John A. Yates
Texas Bar No. 24056569
jyates@pattersonsheridan.com

Kyrie K. Cameron
Texas Bar No. 24097450
kcameron@pattersonsheridan.com

24 Greenway Plaza, Suite 1600
Houston, TX 77046
Phone: (713) 623-4844
Fax: (713) 623-4846

Abelino Reyna
Texas Bar No. 24000087
areyna@pattersonsheridan.com

900 Washington Ave., Suite 503
Waco, TX 76701
Phone: (254) 777-5248
Fax: (877) 777-8071

**The Ribbeck Law Firm, LPPC**

Craig K. Ribbeck
Texas Bar No. 24009051
craig@ribbecklawfirm.com
6363 Woodway Dr., #565
Houston, TX 77057
Phone: (713) 621-5220

*Counsel for Plaintiff Cub Club Investment, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notifications of such filing to all counsel of record.

*/s/ B. Todd Patterson*
B. Todd Patterson