**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| Cub Club Investment, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>Apple Inc.,<br><br>   Defendant. | § § § § § § § § § § § | Civil Action No.: 6:20-cv-856-ADA-JCM |

**APPLE INC.'S REPLY IN SUPPORT OF MOTION TO TRANSFER VENUE
<u>UNDER 28 U.S.C. § 1404(a)</u>**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. CUB CLUB HAS NOT REBUTTED APPLE'S CLEAR SHOWING THAT THE NORTHERN DISTRICT OF CALIFORNIA IS MORE CONVENIENT ..........................1

III. CUB CLUB HAS NOT SUPPORTED ITS LATE ALTERNATIVE REQUEST FOR TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS ...................................5

IV. CONCLUSION .....................................................................................................................5

**I.       INTRODUCTION**

Cub Club's opposition is telling in what it does not say. It does not dispute that the Northern District of California is where: (1) Apple is based, (2) Cub Club's principal interacted with Apple and Unicode, (3) Apple witnesses who worked with the allegedly infringing emoji are located, (4) the bulk of the relevant documents reside, (5) key non-party witnesses can be compelled to testify, and (6) there is a strong local interest in this action. The *only* purported link to this District that Cub Club has been able to muster is two people associated with a non-party online dictionary about emoji, whose relevance Cub Club does not explain. Cub Club's arguments against transfer ignore governing law and resort to implausible speculation contradicted by Apple's sworn evidence. The Northern District of California is the clearly more convenient venue, and the Court should grant Apple's motion.

**II.      CUB CLUB HAS NOT REBUTTED APPLE'S CLEAR SHOWING THAT THE NORTHERN DISTRICT OF CALIFORNIA IS MORE CONVENIENT.**

***Costs for willing witnesses***. Apple demonstrated that numerous likely witnesses—including Apple employees and third parties who worked on the emoji at issue—are in the Northern District of California and none is in this District. (Mot. 4–5.) Cub Club does not dispute these witnesses' relevance. Instead, it complains that Apple did not sufficiently outline the substance of their testimony. (Opp. 2.) Not so. Apple identified each witness's area of knowledge of Apple's emoji with skin-tone variation—the very emoji Cub Club has put at issue. (Rollins Dec. ¶¶ 6–11.) Apple's sworn evidence establishes that *no* Apple employees in Austin work on those emoji, while the vast majority who do are in Northern California. (*Id.* ¶¶ 5–11.) Cub Club offers nothing to dispute this. Instead, it speculates—without evidence—that some unidentified Apple employees in Austin "likely have knowledge (and documents) relevant to this case." (Opp. 2.) But

speculation does not rebut a sworn statement.[1] (Mot. 3–4.) Nor may Apple's California witnesses be discounted because they might be "available" to testify in Austin. (Opp. 3.) Even if "available," Fifth Circuit law treats their inconvenience as significant. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 317 (5th Cir. 2008) (en banc) ("*Volkswagen II*").

Nor does Cub Club plausibly identify any witnesses in this District. Cub Club's attempt to do so, by citing an Apple employee in Austin (James Logan) who works on Inclusion & Diversity Business Partnership (Opp. at 2-3), is facially implausible. Mr. Logan and Apple's diversity initiatives have no relevance to this intellectual property case. Cub Club alleges that in 2014 Mrs. Parrott spoke with Apple employees who work on emoji (Compl. ¶¶ 20–47), omitting that this was in Northern California (Rollins Decl. ¶ 11), with then-Apple employees (Celia Vigil and Peter Edberg) whose team was based in the Northern District of California. Cub Club does not allege that Mrs. Parrott met with any Apple employee in Texas or any employee who works out of Texas. And, unsurprisingly, neither the complaint nor Cub Club's opposition here allege she spoke with Mr. Logan or anyone else on the Inclusion & Diversity team. This largely California-based team works on diversity initiatives for Apple's *internal* business divisions, not on outward-facing business partnerships or product functionality like emoji—Cub Club does not allege otherwise. Even worse, Mr. Logan worked in Asia at the relevant time and did not start working in Austin (or on the Inclusion & Diversity team) until after Mrs. Parrott's alleged interactions with Apple in San Jose. (Opp. Ex. 5.) Equally unsupported is Cub Club's assertion that "Apple has stated a core

---

[1] In a footnote, Cub Club suggests venue-related discovery is necessary to determine if any of Apple's Austin employees have relevant information. (Opp. 2 n.2.) But Cub Club has shown no interest in taking such discovery. It has not served a single discovery request. Cub Club did not even mention discovery when it requested an extension of time to oppose Apple's transfer motion, even as it acknowledged that transfer "should take top priority." (Dkt. 24 at 1.) With Cub Club having apparently decided it would be better served by briefing this motion without discovery, the Court should resolve the motion now on the record the parties chose to put before it.

mission of its Austin campus is furtherance of Apple's commitment to diversity and inclusion." (Opp. 2.) Cub Club declines to identify where Apple supposedly made this statement; Apple's inclusion and diversity initiatives are global, not unique to Austin.

Cub Club's other attempts to find witnesses in this District are futile. It offers no plausible explanation for why a part-time social media manager who joined Emojipedia (a third-party website) in 2019 could testify about Unicode meetings in 2014–2015.[2] (Opp. Ex. 13.) Nor does it provide any basis for the idea that a researcher who worked for Emojipedia in 2018–2019 somehow knows about "Apple's diverse emoji implementation." (Opp. 4 n.3; *see id.* Ex. 14.)

Cub Club notes that several witnesses do not reside in California. (Opp. 2–3.) But these witnesses are outside *either* venue and will be inconvenienced regardless (*see* Mot. 5); this does not change the fact that many likely witnesses *are* in Northern California. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (rejecting, under Fifth Circuit law, "rigid assessment" that witness convenience "should only favor transfer if it will be more convenient for *all* of the witnesses"). Cub Club "improperly use[s]" this Court's "central location as a consideration in the absence of witnesses within the plaintiff's choice of venue." *Id.* at 1344.

***Relative ease of access to sources of proof***. Apple's documents were created in, are stored in, and will be produced from Northern California. (Mot. 6.) Cub Club argues that Apple can electronically collect the relevant information in Austin. (Opp. 6.) This argument is precluded by controlling precedent and ignores the evidence that the relevant documents "reside primarily on local computers located in California." *Volkswagen II*, 545 F.3d at 316 (noting location of documents remains "a meaningful factor"). (Rollins Dec. ¶ 5.) While Cub Club is correct that this is

---

[2] Ryan McDearmont, the Emojipedia employee in question, is one of nine potential witnesses whom Cub Club failed to identify in its November 30 initial disclosures but added in an amended version served the same day as its opposition. (*See* Supp. Dec. of Gabriel S. Gross ¶ 2 & Ex. 1.)

3

not a patent case, it cannot seriously dispute that any accused infringer (here, Apple) is likely to have vastly more relevant documents. (Mot. 5–6.) This asymmetry naturally bears on the "relative ease of access" and favors transfer. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

*Availability of compulsory process*. Apple identified four specific, likely third-party witnesses in the Northern District of California, all of whom would be subject to compulsory process only in that venue. (Mot. 7.) Cub Club agrees that these witnesses have "discoverable information." (*See* Supp. Gross Dec. ¶ 2 & Ex. 1.) It does not suggest they could be subpoenaed in this District. Instead, Cub Club contends that there are *also* potential witnesses outside both venues, so the Court should find this factor neutral. (Opp. 6–7.) This ignores the law. *See Genentech*, 566 F.3d at 1345, 1348. Moreover, three of the four witnesses Cub Club cites (Opp. 7) are *party* witnesses and thus irrelevant to this factor. *See Volkswagen II*, 545 F.3d at 316–17.

*Local Interest*. Cub Club does not dispute that the Northern District of California has a strong local interest, presumably because it recognizes that any local interest must be tied to the facts of the case (Opp. 7), and that the vast majority of those ties here are to Northern California. That is where Apple designed the allegedly infringing emoji, where the employees whose reputations are implicated by Cub Club's allegations live and work, and where most of Mrs. Parrott's alleged interactions with Apple and Unicode took place. (Mot. 7–9.) Instead, Cub Club speculates that Apple's Austin employees might have their reputations called into question too. (Opp. at 7–8.) But Cub Club offers no evidence to rebut Apple's undisputed, sworn declaration to the contrary. (Mot. at 5; Rollins Dec. ¶¶ 5–13.) That the Mac Pro is assembled in Austin is likewise irrelevant; Cub Club admits that software, not hardware, "enables the emoji keyboard functionality." (Opp. 8.) That software was designed in California. (Mot. 5–6).

Cub Club rightly does not rely on its alleged Austin connections to create a local interest.

4

(*See* Opp. 1.)  Katy Parrott having an idea about emoji while a student in Austin is irrelevant; copyright protection does not extend to ideas. 17 U.S.C. § 102(b). (Dkt. 22 at 7–9).  This unsupported allegation also contradicts Cub Club's contemporaneous origin story.  (*See* Supp. Gross Dec. ¶ 3 & Ex. 2 (stating Katy Parrott had idea while "home in League City")); Compl. ¶ 16.  Nor do an Austin app launch or movie-theater ads have any plausible relevance.

*Familiarity with governing law and conflicts of law*.  Apple showed that Cub Club's state-law claims are either preempted or subject to California law under Texas's conflict of law rules. (Mot. 9.)  Cub Club criticizes Apple's arguments as "conclusory" and "self-serving" (Opp. 8–9) but does not (because it cannot) explain why they are wrong.  And notwithstanding Cub Club's assertion to the contrary, Cub Club does not have a "right to bring a cause of action under a Texas statute" (Opp. 9.)—preemption and conflicts rules dictate what law will govern.

*Administrative Difficulties*.  Instead of refuting Apple's showing that both venues have comparable times to trial (Mot. 10), Cub Club argues that transfer will cause delay because of California's COVID-19-related restrictions.  (Opp. 9.)  But arguments "relying on the impact of . . . COVID-19" are "too speculative" "to weigh either for or against transfer." *STC.UNM v. Apple Inc.*, No. 6:19-CV-00428-ADA, 2020 WL 4559706, at *7 n.3 (W.D. Tex. Apr. 1, 2020).

### III. CUB CLUB HAS NOT SUPPORTED ITS LATE ALTERNATIVE REQUEST FOR TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS.

Cub Club briefly suggests that, if transfer is warranted, it should be to the Southern District of Texas, where it resides.  (Opp. 10.)  But Cub Club declined to file there.  And while Galveston might be more convenient for Cub Club's founder, the Northern District of California is more convenient for most witnesses, including undisputedly relevant non-parties.  *See supra* 4.

### IV. CONCLUSION

Apple respectfully requests that the Court grant its motion to transfer.

Dated:  December 16, 2020

Respectfully submitted,

/s/ Paige Arnette Amstutz

Andrew M. Gass
*Admitted Pro Hac Vice*
andrew.gass@lw.com
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: (415) 391-0600
Facsimile:  (415) 395-8095

Gabriel S. Gross
*Admitted Pro Hac Vice*
gabe.gross@lw.com
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, California 94025
Telephone: (650) 328-4600
Facsimile:  (650) 463-2600

Paige Arnette Amstutz
State Bar No. 00796136
pamstutz@scottdoug.com
Sameer Hashmi
State Bar No. 24101877
shashmi@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701
Telephone: (512) 495-6300
Facsimile:  (512) 495-6399

Elana Nightingale Dawson
*Admitted Pro Hac Vice*
elana.nightingaledawson@lw.com
Carolyn M. Homer
*Admitted to practice in W.D. Tex.*
carolyn.homer@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile:  (202) 637-2201

*Attorneys for Defendant Apple Inc.*

**CERTIFICATE OF SERVICE**

   I hereby certify that this document was filed through the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    */s/Paige Arnette Amstutz*